[Crim. No. 22265. Sept. 27, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
JUNE LEORA LOPES SIMS, Defendant and Respondent.

**472**

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Gloria F. DeHart and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Appellant.

Juliana Drous, under appointment by the Supreme Court, for Defendant and Respondent.

Alan Lieberman, Stephen Nielson, Quin Denvir, State Public Defender, and Paul D. Fogel, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Respondent.

OPINION

BIRD, C. J.—This case presents questions that arise when a welfare recipient who has been exonerated of fraud charges in an administrative

hearing conducted by the Department of Social Services is subsequently prosecuted in a criminal proceeding for the same alleged misconduct. The most significant issue is whether the doctrine of collateral estoppel bars the prosecution from relitigating in the criminal proceeding issues that were previously resolved in the administrative hearing.

## I.

Respondent, June Sims, is a welfare recipient and mother of three children. By letter dated April 11, 1978, the Social Services Department of Sonoma County (County) informed respondent that she had received $5,395 in Aid to Families With Dependent Children (AFDC) and $1,144 in food stamp benefits to which she was not entitled. The letter claimed that respondent had failed to report that the children's stepfather, Charles Sims, was fully employed and living at home while respondent received public assistance from December of 1976 to April of 1978. The letter also demanded that respondent make restitution for the benefits alleged to have been fraudulently obtained. Respondent agreed to repay the County at a rate of $50 per month.

On May 2, 1978, the County prepared a "Notice of Action" against respondent. The notice proposed to reduce future cash grants to respondent to compensate for the alleged overpayments. On August 22, 1978, respondent filed a request for a "fair hearing" pursuant to Welfare and Institutions Code section 19050 to challenge the propriety of the County's action.[1]

Prior to the date that respondent requested a fair hearing, a criminal complaint had been filed against her in municipal court. The complaint was based on the same allegations of fraud that were the subject of the County's "Notice of Action." On September 25, 1978, the prosecution charged respondent by information with a felony violation of section 11483 (unlawfully obtaining AFDC for children not entitled to such aid) and a misdemeanor violation of former section 18910 (fraudulently acquiring food stamps).[2] Respondent was arraigned on October 12th and pleaded not guilty.

---

[1]Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

[2]Section 18910 was repealed and replaced by Penal Code section 396. (Stats. 1979, ch. 1170, §§ 3, 15, pp. 4561, 4567.)

On November 29, 1978, while the criminal charges were pending, respondent's fair hearing was held before a hearing officer of the California Department of Social Services (DSS). The County declined to present any evidence against respondent at the hearing. It contended that the DSS lacked jurisdiction to hear the case since criminal charges were still pending in the superior court. Respondent submitted the County's investigation report to the hearing officer and presented evidence to disprove the allegation of fraud. Charles Sims testified that during the time in question he lived at addresses other than that of respondent.

The hearing officer concluded that the DSS did have jurisdiction to hear the case and that the County had failed to meet its burden of proving that respondent had fraudulently obtained welfare benefits. The County was ordered to rescind its "Notice of Action" against respondent and refund any restitution payments respondent had made.

The director of the DSS adopted the fair hearing result on February 7, 1979. The County did not file with the director a request for a rehearing, nor did it seek judicial review of the decision.

Subsequently, respondent moved to dismiss the criminal charges pending against her in superior court. Respondent argued that the administrative finding that she had not received any overpayments rendered the County's restitution demand of April 11, 1978, void. Therefore, the requirement of section 11483 that a demand for restitution be made before a recipient accused of welfare fraud is prosecuted was not met. In the alternative, respondent claimed that the fair hearing decision barred the criminal prosecution under the doctrine of collateral estoppel.

The trial court granted respondent's motion on May 9, 1979, and dismissed the information. ■ ■ ■ ■ The state appealed this dismissal.[3]

---

[3]The prosecution characterizes the trial court's decision as being a dismissal in "furtherance of justice" pursuant to Penal Code section 1385. It argues that as such, the dismissal must be reversed, since no reasons for the dismissal were set forth by the trial judge in "an order entered upon the minutes." (Pen. Code, § 1385; *People* v. *Orin* (1975) 13 Cal.3d 937, 943-945 [120 Cal.Rptr. 65, 533 P.2d 193].) However, the record clearly shows that the trial court did not dismiss the information against respondent under Penal Code section 1385. The trial court granted respondent's common law pretrial motion to dismiss which was made pursuant to *People* v. *McGee* (1977) 19 Cal.3d 948, 968, footnote 9 [140 Cal.Rptr. 657, 568 P.2d 382]. There is no requirement that the trial court's reasons for granting this type of motion to dismiss be set forth in the minutes.

## II.

Section 11483 prescribes criminal penalties for persons who have fraudulently obtained AFDC benefits. The statute incorporates by reference the requirement that "restitution shall be sought . . . prior to the bringing of a criminal action."[4] In *People* v. *McGee, supra*, 19 Cal.3d 948, this court held that the state's failure to comply with the statutory restitution requirement was grounds for dismissal of the criminal prosecution. (*Id.*, at p. 966.)

Here, respondent received a letter demanding restitution for overpayments in AFDC and food stamp benefits three months prior to the date the criminal complaint was filed. Respondent contends, however, that the subsequent fair hearing determination that no overpayments had been made rendered the request for restitution void. Therefore, under *McGee*, the information was correctly dismissed.

The purpose of the demand for restitution requirement is to give "limited protection to those accused of welfare fraud." (*Id.*, at p. 965.) The accused "ha[s] an early opportunity to make restitution and, thereby, possibly obtain favorable consideration by the prosecuting authorities." (*Id.*, at p. 964.) After restitution is sought, the prosecutor must make an evaluation of the circumstances of the case, including the nature of the accused's response to the restitution demand.

Once the evaluation of the case is completed, however, the prosecutor is "free to determine whether or not criminal proceedings should

---

[4]At the time that the state's prosecution of respondent was commenced, section 11483 provided in pertinent part that "[a]ll actions necessary to secure restitution shall be brought against persons in violation of this section as provided in sections 12250 and 12850." Sections 12250 and 12850, which concerned the fraudulent obtaining of other types of public assistance, each contained the following language as a concluding paragraph: "It is the intent of the Legislature that restitution shall be sought by request, civil action, or other suitable means prior to the bringing of a criminal action." Although sections 12250 and 12850 were repealed in 1973, the incorporation of their language by section 11483 was not affected. (*People* v. *McGee, supra*, 19 Cal.3d at p. 958, fn. 3; *People* v. *Jordan* (1978) 86 Cal.App.3d 529, 531, fn. 1 [150 Cal.Rptr. 334].)

Section 11483 was amended in 1979 so that now an attempt to secure restitution prior to bringing a criminal action is only required where a person is charged with failing to report not more than $2,000 of income or resources or failing to report the presence of one additional person or persons in the household. (Stats. 1979, ch. 1170, § 12, p. 4566; Stats. 1979, ch. 1171, § 1, p. 4568.) This amendment has no bearing on the instant case.

thereafter be pursued." (*Id.*, at p. 965.) There are no circumstances under which *McGee* mandates that the prosecution be dismissed so long as the statutory requirements were satisfied before the proceedings were commenced. For example, a criminal prosecution is not barred even though the accused has already made or is in the process of making full restitution. (*People* v. *Isaac* (1976) 56 Cal.App.3d 679, 682 [128 Cal. Rptr. 872]; *Madrid* v. *Justice Court* (1975) 52 Cal.App.3d 819, 824 [125 Cal.Rptr. 348].) Similarly, *McGee*, itself, does not require the dismissal of a prosecution when a fair hearing exonerates the accused of the alleged fraud after the criminal proceedings have commenced.

The cases relied on by respondent do not support her contention. In *People* v. *Harper* (1981) 121 Cal.App.3d 283 [175 Cal.Rptr. 146], the Court of Appeal held that a restitution demand sent to the accused without any subsequent consideration given by the prosecutor to the accused's attempts at restitution amounted to "mechanical compliance" with section 11483 and required dismissal of the prosecution. In *People* v. *Jenkins* (1980) 28 Cal.3d 494, 509 [170 Cal.Rptr. 1, 620 P.2d 587], this court held that the statutory demand for restitution could not be circumvented by prosecuting an accused for perjury under Penal Code section 118 rather than for AFDC fraud under section 11483. Neither of these cases provides authority for the position respondent urges this court to take.[5]

By arguing that the County's demand letter was rendered void by the fair hearing decision, respondent is in effect asking this court to find that the fair hearing decision was a conclusive determination that no overpayment of welfare benefits had been made. That administrative decision should not be binding unless the doctrine of collateral estoppel is applicable. This separate issue is addressed in the next section of the opinion.

## III.

The primary issue posed by this appeal is whether the fair hearing decision exonerating respondent of welfare fraud collaterally estopped

---

[5]Respondent was also charged with fraudulently obtaining food stamps in violation of former section 18910. It does not appear that section 18910 contains the same requirement as section 11483 that a demand for restitution be made prior to the initiation of criminal proceedings. Thus, even if this court agreed with respondent that the fair hearing decision voided the prior demand letter, such a holding would not require dismissal of count II of the information alleging a violation of section 18910.

the prosecutor from pursuing a criminal action against respondent for the same alleged misconduct.

██ Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].)[6] Traditionally, the doctrine has been applied to give conclusive effect in a collateral court action to a final adjudication made by a court in a prior proceeding. Since the fair hearing decision exonerating respondent of welfare fraud was not a court proceeding, it must be determined initially whether an administrative decision made at a fair hearing may ever be accorded collateral estoppel effect. If this preliminary question is decided affirmatively, then this court must consider whether the traditional requirements and policy reasons for applying collateral estoppel were satisfied by the facts of this case.

A.

██ Much uncertainty and confusion exist in the case law as to whether the decisions of an administrative agency may ever collaterally estop a later action. "The problem seems to lie in the varying types of administrative agencies and their procedures, and widespread disagreement whether their decisions are judicial, quasi-judicial, or administrative only." (*Williams* v. *City of Oakland* (1973) 30 Cal.App.3d 64, 68. [106 Cal.Rptr. 101]; see 2 Cal.Jur.3d, Administrative Law, § 239, pp. 476-478.) It is probably impossible to distinguish or reconcile the numerous cases that span this century. In this case, the court is only concerned with whether a DSS fair hearing decision has binding effect in a collateral criminal proceeding. Case law indicates that there is no absolute bar to according that decision such an effect.

In *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 732 [13 Cal.Rptr. 104, 361 P.2d 712], this court

---

[6]Collateral estoppel is a "secondary aspect" of the res judicata doctrine. (*Clark* v. *Lesher, supra,* 46 Cal.2d at p. 880.) In its primary aspect, res judicata operates as a bar to the maintenance of a second suit between the same parties or parties in privity with them on the same cause of action. (*Ibid.*; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d at p. 604.) The court decisions and legal commentators often do not distinguish between the two aspects of the doctrine and refer generally to "res judicata" when discussing whether determinations of administrative agencies may be binding in subsequent proceedings.

quoted from 2 Davis, Administrative Law (1958) section 18.03, page 568: "'The key to a sound solution of problems of res judicata in administrative law is recognition that the traditional principle of res judicata as developed in the judicial system should be fully applicable to some administrative action, that the principle should not be applicable to other administrative action, and that much administrative action should be subject to a qualified or relaxed set of rules.' [Citations.]"

*Hollywood Circle* involved an appeal by a corporation to the Alcoholic Beverage Control Appeals Board regarding the revocation of its "on-sale liquor license." The board dismissed the appeal as untimely. Thereafter, the corporation brought a second proceeding before the same board and again sought to establish the timeliness of its appeal. On review by this court of the board's refusal to reconsider the appeal, it was held that the prior determination finding the appeal to be untimely was final and could not be relitigated in the second proceeding. The court reasoned that the decision of the administrative agency was a "purely judicial one . . . . The [res judicata] doctrine applies to such a decision, unless the statute creating the agency authorizes it to reconsider the case." (*Ibid.*)

Although *Hollywood Circle* involved the application of res judicata principles in the context of successive proceedings before the same administrative agency, the holding of that case has not been limited to its facts. In *City and County of San Francisco* v. *Ang* (1979) 97 Cal.App. 3d 673 [159 Cal.Rptr. 56], the Court of Appeal relied on *Hollywood Circle* to bar the relitigation in a collateral civil proceeding of a zoning issue previously decided by a city board of permit appeals. In *Ang*, the board found that defendant's operation of a catering service was permitted by the zoning ordinance governing the district in which the business was located. Subsequently, San Francisco filed suit for an injunction to abate the catering business as a nuisance. The city alleged that its zoning ordinances prohibited the business from operating where it was located. The Court of Appeal held that the board's decision upholding the legality of the operation of the catering service was binding in the nuisance action. The board exercised a quasi-judicial function and had jurisdiction to hear and determine the controversy concerning the claimed zoning violation. "[O]rdinarily at least," the court concluded, "'"whenever any board, tribunal, or person is by law vested with authority to decide a question, such decision, when made, is *res judicata*, and as conclusive of the issues involved in the decision as though the adjudi-

cation had been made by a court of general jurisdiction.'" [Citation.]" (*Id.*, at p. 679.)

In seeking to determine whether a DSS fair hearing decision may have collateral estoppel effect, this court also finds appropriate guidance in *United States* v. *Utah Constr. Co.* (1966) 384 U.S. 394 [16 L.Ed.2d 642, 86 S.Ct. 1545]. There, the United States Supreme Court stated: "Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. [Fn. omitted.]" (*Id.*, at pp. 421-422 [16 L.Ed.2d at p. 660].) Collateral estoppel may be applied to decisions made by administrative agencies "[w]hen an administrative agency is *acting in a judicial capacity* and *resolves disputed issues of fact* properly before it which the parties have had an *adequate opportunity to litigate* ...." (*Id.*, at p. 422 [16 L.Ed.2d at p. 661], italics added.)[7] This standard formulated by the Supreme Court is sound, and it comports with the public policy underlying the collateral estoppel doctrine "of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citations.]" (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892].)

To ascertain whether an agency acted "in a judicial capacity," the federal courts have looked for factors indicating that the administrative proceedings and determination possessed a "'judicial' character." (*Shell Chem. Co., Div. of Shell Oil Co.* v. *Teamsters L.U. No. 676* (D.N.J. 1973) 353 F.Supp. 480, 485; see *also Painters Dist. Coun. No. 38, Etc.* v. *Edgewood Contracting Co.* (5th Cir. 1969) 416 F.2d 1081; *Groom* v. *Kawasaki Motors Corp., USA* (W.D.Okla. 1972) 344 F.Supp. 1000.)

■ ■■■ Here, the fair hearing conducted by the DSS pursuant to section 10950 was a judicial-like adversary proceeding.[8] ■ Sec-

---

[7]Although the Supreme Court's discussion of collateral estoppel in *Utah Construction* was technically dictum, the federal courts have consistently followed the rule set forth in that case. (Note, *The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation* (1977) 46 Geo. Wash. L.Rev. 65, 91, and cases cited therein.)

[8]The fact that statewide and local administrative agencies are prohibited from exercising "judicial power" by the California Constitution does not mean that agency proceedings and determinations may never be judicial in nature. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]; *Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557 [59 P.2d 119].) This distinction was not recognized by *Empire Star Mines Co.* v. *Cal. Emp. Com.* (1946) 28 Cal.2d 33 [168 P.2d 686], upon which the People rely for the proposi-

tion 10955 required that the hearing be conducted in an "impartial . . . manner" and that "[a]ll testimony . . . be submitted under oath or affirmation." The DSS allowed either party to call, examine, and cross-examine witnesses as well as to introduce documentary evidence and make oral or written argument. At the request of the County or respondent, the chief referee was required to subpoena witnesses whose expected testimony would be material or necessary to the case. (DSS, Manual of Policies & Proc., reg. 22-049.6 (hereafter, MPP).[9] It was also required by regulation 22-049.3 that a verbatim record of the testimony and exhibits introduced at the hearing be maintained. In addition, the parties received from the DSS a written statement of the reasons why the hearing officer exonerated respondent of the fraud allegations.

Finally, the hearing officer's decision, itself, was adjudicatory in nature. The decision involved the application of "a rule [requiring restitution for fraudulently obtained overpayments] to a specific set of existing facts," rather than "the formulation of a rule to be applied to all future cases." (See *Strumsky* v. *San Diego County Employees Retirement Assn., supra*, 11 Cal.3d at pp. 34-35, fn. 2.) After the decision had been adopted by the director of the DSS, the County had both the right to seek a rehearing before the agency and the right to petition for review in superior court. (§§ 10959, 10962.)[10]

Although the fair hearing was not conducted according to the rules of evidence applicable to judicial proceedings, this difference does not preclude a finding that the DSS was acting in a "judicial capacity." Collateral estoppel effect is given to final decisions of constitutional agencies

---

tion that collateral estoppel is not applicable to administrative agency decisions. In *Empire Star Mines*, the court found a decision of the California Employment Commission not to be binding in a subsequent court proceeding because the commission did not exercise "judicial power" under the Constitution. (*Id.*, at p. 48.) The court did not determine whether the commission's proceedings were judicial in nature. The analysis of *Empire Star Mines* is inconsistent with that conducted in *Hollywood Circle, Utah Construction,* and the instant case. So that the law is free from ambiguity in this area, *Empire Star Mines* is overruled to the extent that it conflicts with this opinion.

[9]The regulations of the MPP cited in this opinion are those that were in effect on November 25, 1978, the date of respondent's fair hearing. Many of these regulations have since been repealed and replaced. However, the current regulations governing the fair hearing process provide for the same judicial-like adversary proceeding.

[10]Section 10962 provides that either party may obtain review of the fair hearing decision under the provisions of section 1094.5 of the Code of Civil Procedure. This method of review is available only where the contested administrative decision is adjudicative in nature. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 814, fn. 9 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Strumsky* v. *San Diego County Employees Retirement Assn., supra*, 11 Cal.3d at p. 34, fn. 2.)

such as the Workers' Compensation Appeals Board (formerly the Industrial Accident Commission) and the Public Utilities Commission even though proceedings before these agencies are not conducted according to judicial rules of evidence. (*French* v. *Rishell* (1953) 40 Cal.2d 477, 480-481 [254 P.2d 26]; *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 630 [268 P.2d 723]; see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 159, pp. 3303-3304.) The pertinent inquiry is whether the different standard for admitting evidence at the fair hearing deprived the parties of a fair adversary proceeding in which they could fully litigate the issue of respondent's fraud. Clearly, this was not the case.

The second prong of the Supreme Court test, that the agency resolve disputed issues of fact properly before it, was also satisfied by respondent's fair hearing. The disputed issue of fact resolved by the DSS was whether respondent had fraudulently obtained welfare benefits to which she was not entitled. The DSS had jurisdiction to decide this issue. Section 10950 et sequitur authorizes the DSS to conduct fair hearings to resolve claims by recipients that they did not commit the welfare fraud with which they are charged. The People do not contend otherwise.

Finally, the fair hearing process provided both the County and respondent with an adequate opportunity to fully litigate their claims before the DSS. That the County failed to present evidence or otherwise participate at the hearing does not prove the contrary. The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra*, 58 Cal.2d at p. 607.) Even a judgment of default in a civil proceeding is "res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint." (*Fitzgerald* v. *Herzer* (1947) 78 Cal.App.2d 127, 132 [177 P.2d 364].)

What is significant here is that the County had notice of the hearing as well as the opportunity and incentive to present its case to the hearing officer. Respondent was charged with receiving substantial overpayments in excess of $6,000. In addition, under the regulations of the MPP, the County had the sole and full responsibility for presenting the case against respondent during the hearing.[11] The People cannot now

---

[11]Indeed, regulation 22-049.1 provided that "[c]ounty welfare department representation is ... *required*" at the fair hearing. (Italics added.)

take advantage of the fact that the County avoided its litigation responsibilities and chose not to present evidence at the prior proceeding.

Thus, respondent's fair hearing satisfied each of the criteria of *Utah Construction.* The decision exonerating respondent of fraud may be given collateral estoppel effect. This is true even where, as in this case, the successive proceedings involved are different in nature and the proceeding to be estopped is a criminal prosecution.

The cases recognize that where successive proceedings are different in nature, one criminal and one civil, collateral estoppel may still bar relitigation of an issue decided in the first action.

In *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal. 2d 601, plaintiff corporations sued their insurance carrier to recover under insurance contracts for losses allegedly caused by a robbery. The insurance company maintained that collateral estoppel barred the plaintiffs' lawsuit. In a prior criminal proceeding, Teitelbaum, the president of the corporations, had been convicted of conspiracy to commit grand theft, attempted grand theft, and filing a false insurance claim with respect to these same losses which the corporations now claimed were caused by a robbery not staged by Teitelbaum. The corporations conceded that they were "mere alter egos" of their president. Finding that the issue adjudicated adversely to Teitelbaum in the criminal action was identical to the issue presented by plaintiffs in the civil suit, this court held that collateral estoppel prevented plaintiffs from relitigating the cause of their loss and entered judgment for the insurance company. (*Id.*, at pp. 603-604.)

It has also been found by this court that an adjudication of an issue in a criminal trial may collaterally estop the state from pursuing another criminal prosecution based on the same controversy. (*People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622].) Taylor was the getaway car driver in a liquor store robbery committed by Smith and Daniels. During the robbery, the owner of the store shot and killed Smith. (*Id.*, at pp. 689-690.) The state's prosecution of Daniels for Smith's murder resulted in an acquittal. However, in a subsequent prosecution, Taylor was convicted of the same homicide on the theory that he was vicariously liable for the conduct of his confederates. This court reversed the conviction, finding that collateral estoppel precluded the state from prosecuting Taylor. (*Id.*, at p. 691.) The court explained that to convict Taylor of the homicide, the prosecutor had to prove that

at least one of Taylor's confederates acted with the requisite malice aforethought during the robbery and shooting. However, the jury at Daniels' trial had found that neither of the confederates harbored malice during the incident. Applying the doctrine of collateral estoppel, the court held that this judgment was conclusive and could not be relitigated by the state at Taylor's trial. (*Id.*, at pp. 691-692.)[12]

It appears that this court has not before given an administrative agency's determination binding effect on a subsequent criminal proceeding. However, the absence of any decisions involving precisely the same facts as the present case is not, by itself, justification for this court to reject application of the doctrine in this context. ■ ■■■ ■ As in *Taylor*, the inquiry that must be made is whether the traditional requirements and policy reasons for applying the collateral estoppel doctrine have been satisfied by the particular circumstances of this case.[13]

---

[12]This court has also found that a superior court's granting of a writ of habeas corpus to a petitioner may be binding in a subsequent criminal proceeding. (*In re Crow* (1971) 4 Cal.3d 613 [94 Cal.Rptr. 254, 483 P.2d 1206].) In *Crow*, this court stated that "[a] final order ... granting relief to a petitioner on habeas corpus is a conclusive determination that he is illegally held in custody" and cannot later be relitigated in a criminal prosecution by the state. (*Id.*, at p. 623.)

[13]*People* v. *Demery* (1980) 104 Cal.App.3d 548 [163 Cal.Rptr. 814] does not preclude a finding that the fair hearing decision exonerating respondent of welfare fraud has collateral estoppel effect in the criminal prosecution. In *Demery*, the Court of Appeal found that a decision by the State Board of Medical Quality Assurance that the appellant had not violated Health and Safety Code section 11154 was not binding in a subsequent criminal prosecution for the same offense. The court reasoned that the objective of the hearing before the board differed from that of the criminal trial. The function of the administrative proceeding was merely to police licensing requirements rather than make determinations of guilt or innocence of criminal charges. (*Id.*, at pp. 560-561.) Here, however, the function of the DSS fair hearing was virtually identical to that of the criminal trial. The DSS had to determine whether respondent had obtained welfare to which she was not entitled. Only if such a finding was made could the County obtain restitution. Thus, the rationale for not applying collateral estoppel to the decision of the State Board of Medical Quality Assurance is not valid in the circumstances of this case.

*Demery* also found that applying collateral estoppel to the board decision in the subsequent criminal trial would have defeated the prosecutor's right to a jury trial under article I, section 16 of the California Constitution. The state has never asserted this claim. However, even if such a claim had been raised, this court's resolution of the collateral estoppel issue would not change. The scope of the prosecutor's right to a jury trial in criminal cases is unclear and has never been fully addressed by this court. Article I, section 16 requires that the prosecutor's consent be obtained before an accused, who has pleaded not guilty to an offense, can waive a jury trial. (*People* v. *Washington* (1969) 71 Cal.2d 1061, 1086-1087 [80 Cal.Rptr. 567, 458 P.2d 479].)

Even assuming that the state has a separate and independent right to a jury trial, such a right is clearly not absolute. For example, under Penal Code section 1118.1, a

B.

Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]."[14] (*People v. Taylor, supra,* 12 Cal.3d at p. 691.)

■ It is implicit in this three-prong test that only issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. (See *Clark v. Lesher, supra,* 46 Cal.2d at p. 880.) An issue is actually litigated "[w]hen [it] is *properly raised,* by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . . A determination may be based on a *failure of . . . proof* . . . ." (Rest.2d, Judgments (1982) § 27, com. d, p. 255, italics added.)

Here, the welfare fraud issue was "properly raised" by respondent's request for a fair hearing pursuant to Welfare and Institutions Code section 19050. After the fair hearing, the controversy was "submitted" to the DSS for a "determination" on the merits. The hearing officer found that the County had failed to prove that respondent had fraudulently obtained welfare benefits.

Thus, it is clear that respondent's guilt or innocence of welfare fraud was actually litigated at the DSS fair hearing. The County's failure to present evidence at the hearing did not preclude the fraud issue from being "submitted" to and "determined" by the DSS.

---

trial judge may order the acquittal of the accused before a case is submitted to the jury if the judge finds the evidence to be insufficient to sustain a conviction of the charged offense. A judgment of acquittal entered pursuant to section 1118.1 is a bar to any subsequent prosecution for the same offense. (Pen. Code, § 1118.2.) Thus, any right to a jury trial possessed by the state is only a right to submit to a jury issues of fact which are triable. When issues of fact have been conclusively resolved against the state in a prior administrative action, application of collateral estoppel to take those issues from the jury does not violate the state's right to trial by jury.

[14]The federal courts have also required that in addition to the criteria of *Utah Construction,* the traditional elements of collateral estoppel be met before finding that an administratively determined matter may not be relitigated in a subsequent court proceeding. (Note, *The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation, supra,* 46 Geo. Wash. L.Rev. at p. 91.)

■ The fraud issue actually litigated before the DSS was identical to that involved in the criminal proceedings. At the fair hearing, respondent contested the County's "Notice of Action" which claimed that she had been overpaid $5,395 in AFDC benefits and $1,144 in food stamp benefits. The notice was based on respondent's alleged failure to report that her children's stepfather was living at home and sharing expenses from December of 1976 to April of 1978.

In the criminal prosecution, the identical factual allegations were in issue. The information charged respondent with fraudulently receiving the same overpayments that were the subject of the County's demand letter and "Notice of Action." In addition, the declaration in support of the complaint alleged that the fraud was committed by respondent's "failing to report a change of persons in the household."

Although fair hearings and criminal prosecutions require different burdens of proof, this fact does not preclude a finding in this case that the issues were identical in the two proceedings. Since a fair hearing is civil in nature, the preponderance of evidence standard had to be met by the County. (Cf. *Pereyda* v. *State Personnel Board* (1971) 15 Cal. App.3d 47, 52 [92 Cal.Rptr. 746].) This burden is not as great as the state's burden at a criminal proceeding where an accused's guilt must be proved beyond a reasonable doubt. As a result, if the County fails to prove its allegations by a preponderance of the evidence at the fair hearing, it follows a fortiori that it has not satisfied the beyond a reasonable doubt standard.

Thus, when the hearing officer ruled on the merits in respondent's favor at the fair hearing, he "necessarily decided" a factual issue "identical to the one which [was] sought to be relitigated" in the criminal proceeding. (*People* v. *Taylor, supra*, 12 Cal.3d at p. 691.)

■ More difficult to resolve is whether the fair hearing determination was final for purposes of applying collateral estoppel. The hearing officer's decision was adopted by the DSS director on February 7, 1979. As of the date the County received notice of the director's decision, it had 30 days to request a rehearing. (§ 10960.) When the 30-day deadline passed without a rehearing having been sought by the County, the director's decision became final for purposes of judicial review.[15]

---

[15]The fact that a director's decision is final for purposes of judicial review does not mean that the decision satisfies the finality requirement for application of collateral estoppel. (See *infra*, at p. 486.)

(§ 10962; see *Taylor* v. *McKay* (1975) 53 Cal.App.3d 644, 649-652 [126 Cal.Rptr. 204] [by implication].) The County then had one year from the date it received notice of the director's final decision to petition for mandamus review in superior court. (§ 10962.) Thus, on May 9, 1979, when the trial court dismissed the information against respondent, the time period within which the County could seek mandamus review had not yet lapsed.

Respondent urges this court to find that the fair hearing decision was final as of the date it was adopted by the DSS director. Respondent's theory is that on February 7, 1979, the County was required to immediately implement the order included in the adverse administrative decision. (See *Taylor* v. *McKay, supra,* 53 Cal.App.3d at p. 651.) However, it is a well established rule that only judgments which are free from direct attack are final and may not be relitigated. (*Morris* v. *McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964, 973 [132 Cal.Rptr. 37]; see 4 Witkin, *supra,* at p. 3307.)

For purposes of this case, it is not necessary to determine whether a DSS fair hearing decision becomes final at any point before the time period for seeking mandamus review lapses. The deadline for the County to petition for mandamus has long since passed and the DSS decision is presently free from direct attack. Thus, even assuming arguendo that the fair hearing decision was not final when the trial court dismissed the information, collateral estoppel would now bar prosecuting respondent upon remand.

 With respect to the final requirement for applying collateral estoppel, the state contends that the County and the district attorney are not in privity with each other. They place reliance on *People* v. *La Motte* (1979) 92 Cal.App.3d 604 [155 Cal.Rptr. 5], a case which considered a factual situation similar to that involved here. In *La Motte,* the Court of Appeal found that a fair hearing decision absolving an accused of welfare fraud did not bar the district attorney from prosecuting for the same misconduct since the county welfare department was not a party to the criminal proceedings. (*Id.,* at p. 608.)

*La Motte*'s analysis of the privity requirement is too simplistic. "Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity." (*Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 947 [119 Cal.Rptr. 139].) The concept refers "to a relationship between the party to be es-

topped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098]; see also *Lynch* v. *Glass, supra,* 44 Cal.App.3d at p. 948; *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 773]; *People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal.App.2d 720, 731 [79 Cal.Rptr. 447].)

Here, the district attorney's office, which represents the party to be estopped, and the County, the unsuccessful party in the prior litigation, are "sufficiently close" to warrant applying collateral estoppel. Both entities are county agencies that represented the interests of the State of California at the respective proceedings. The district attorney's office represents the State of California in the name of the "People" at criminal prosecutions. (See Pen. Code, § 684.) At fair hearings, the county welfare department acts as the "agent" of the state.[16] "[T]he courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government. [Fn. omitted.]" (*Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 398 [29 Cal.Rptr. 657, 380 P.2d 97]; see also *Sunshine Coal Co.* v. *Adkins* (1940) 310 U.S. 381, 402-404 [84 L.Ed. 1263, 1275-1277, 60 S.Ct. 907].)

The close association between the County and the district attorney's office can also be seen from the fact that the agencies operate jointly in investigating and controlling welfare fraud. Regulation 20-007 of the MPP required the County to establish a special investigative unit (SIU) to investigate suspected welfare fraud and to function as a liaison between the County and law enforcement agencies. The information gathered by the SIU is used by both the County and the district attorney. When evidence of fraud is uncovered, the SIU must request issuance of a criminal complaint from the district attorney and provide him

---

[16]Under the statutory scheme, the DSS (formerly entitled the Department of Benefit Payments) is "the single state agency with full power to supervise every phase of the administration of public social services ...." (§ 10600; *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 907 [141 Cal.Rptr. 133, 569 P.2d 727].) Section 10800 assigns responsibility for the local administration of state welfare laws to county boards of supervisors who establish county welfare departments. (*Ross* v. *Superior Court, supra,* 19 Cal.3d at 907.) These departments are governed by extensive regulations promulgated by the DSS in the MPP. Division 22 of the manual specifically governs the department's responsibilities at fair hearings concerning welfare fraud.

with all records and reports pertinent to the case. (MPP, reg. 20-007.35.)[17]

In addition, an attempt by the County to obtain restitution of overpayments made to a welfare recipient suspected of fraud is sufficient to satisfy the mandate of section 11483 that the district attorney seek restitution before commencing criminal proceedings. (*People* v. *McGee, supra*, 19 Cal.3d at pp. 968-969.) Finally, when requested, the County must provide documentary evidence to the district attorney and ensure the appearances of investigators and other county officials at hearings and trials. (MPP, reg. 20-005.1.) In view of this close association between the County and the district attorney in controlling welfare fraud, and the fact that both entities are county agencies representing the state, this court finds that the County and the district attorney were in privity with each other.[18]

█ What the above analysis demonstrates is that all of the technical prerequisites for applying collateral estoppel to the fair hearing decision were satisfied. Moreover, estopping the district attorney from prosecuting respondent for welfare fraud would further the traditional public policies underlying application of the doctrine. Giving conclusive effect to the DSS decision exonerating respondent of welfare fraud would promote judicial economy by minimizing repetitive litigation.

In addition, the possibility of inconsistent judgments which may undermine the integrity of the judicial system would be prevented by applying collateral estoppel to the fair hearing decision. Indeed, if the criminal prosecution is allowed to proceed and ultimately results in the respondent's conviction, not only the integrity of the judicial system, but also the integrity of the fair hearing process will be called into question.

The fair hearing is the sole method the Legislature provides for a welfare recipient to challenge the validity of a County determination that benefits have been fraudulently obtained. If in a subsequent criminal prosecution a DSS decision exonerating the recipient of fraud can be disregarded, the value of the fair hearing determination is substantially diminished. In addition, a hardship is worked on the recipient who

---

[17]In this case both the criminal complaint charging respondent with fraud and the declaration filed in support of the complaint were signed by personnel of the DSS.

[18]Accordingly, to the extent that *People* v. *La Motte, supra*, 92 Cal.App.3d 604, is inconsistent with this holding, that case is disapproved.

presents a successful case at the fair hearing. In planning a budget for limited resources, the recipient has to take into consideration that he or she may still be required to return the benefits which the DSS found were legally obtained. No reliance may be placed on the ruling of the DSS exonerating a person of fraud.

Finally, precluding the district attorney from relitigating the issue of respondent's welfare fraud would protect respondent from being harassed by repeated litigation. The County had an adequate opportunity at the fair hearing to prove that respondent had fraudulently obtained welfare benefits. However, respondent successfully demonstrated her innocence. To subject her to a second proceeding in which she must defend herself against the very same charges of misconduct would be manifestly unfair.

In addition to the public policy considerations discussed above, the uniqueness of the statutory scheme governing prosecutions for AFDC fraud and the circumstances of the individuals receiving welfare benefits make application of collateral estoppel particularly appropriate in this case. As this court recognized in *McGee*, the Legislature has apparently determined that since public assistance provides recipients with only the most minimal standard of living, recipients suspected of fraudulently obtaining benefits are entitled to some protection from criminal prosecution. (*People* v. *McGee, supra,* 19 Cal.3d at pp. 963-965.) Accordingly, the unique statutory scheme set up by the Legislature establishes a policy in favor of resolving AFDC fraud cases outside the criminal justice system. (*Ibid.*) The state must seek restitution by request or civil action before initiating criminal proceedings in cases involving certain categories of AFDC fraud. (§ 11483.) When a request for restitution results in a fair hearing determination by the DSS that no fraud has been committed, that decision should collaterally estop a criminal prosecution for the same charge. To hold otherwise, this court would have to ignore the safeguards afforded welfare recipients by the Legislature.

## IV.

In the particular and special circumstances of this case, collateral estoppel bars the state from prosecuting respondent for welfare fraud since she was exonerated in a DSS hearing of that charge. The DSS was "acting in a judicial capacity and resolv[ing] disputed issues of fact properly before it which the parties ... had an adequate opportunity to

litigate." (*United States* v. *Utah Constr. Co., supra*, 384 U.S. at p. 422 [16 L.Ed.2d at p. 661].) Further, the traditional prerequisites and policy reasons for applying collateral estoppel have been met here. The application of collateral estoppel is also warranted in this particular setting due to the unique statutory scheme which established a preference for the noncriminal resolution of cases involving an accusation of welfare fraud.

Accordingly, the trial court's dismissal of the information against respondent is affirmed.

Mosk, J., Richardson, J., Newman, J., Broussard, J., and Reynoso, J., concurred.

KAUS, J.—I respectfully dissent.

Although in many instances administrative rulings may properly be accorded binding effect in subsequent proceedings under collateral estoppel principles (see Rest.2d Judgments, § 83), I believe that the majority's application of the collateral estoppel doctrine in this case is seriously flawed in two respects, one relating to the facts of this particular case and the other pertaining more generally to the relationship between administrative fair hearing proceedings and criminal prosecutions. In my view, each error independently invalidates the majority's conclusion that the collateral estoppel doctrine bars the criminal prosecution here.

I

I turn first to the narrower issue. The majority's invocation of the collateral estoppel doctrine on the facts of this case ignores the black-letter precept that collateral estoppel, as contrasted with the bar or merger aspects of res judicata, is confined to issues *actually litigated* in the initial proceeding. As we stated in *Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865]: "In its secondary aspect res judicata has a limited application to a second suit between the same parties, though based on a different cause of action. The prior judgment is not a complete bar, but it 'operates as an estoppel or conclusive adjudication as to such issues in the second action *as were actually litigated* and determined in the first action.' [Citation.] This aspect of the doctrine of res judicata, now commonly referred to as the doctrine of collateral estoppel, is confined to issues actually litigated." (Italics added.) (See

generally 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 197, 201, pp. 3335, 3339-3341.)[1]

The majority's statement of facts makes it clear, of course, that in this case the county did not "actually litigate" the question of defendant's fraud at the administrative fair hearing. As the majority acknowledges, at that hearing the county declined to present any evidence at all, taking the position that the agency lacked jurisdiction in light of the pending criminal proceedings. At the conclusion of the hearing, the hearing officer simply found—predictably, in light of the county's inaction—that the county had failed to meet its burden of proving that defendant had fraudulently obtained welfare benefits.[2]

Since the county did not appeal the administrative decision, it is, of course, bound by the terms of that ruling. Thus, the county is obligated to refund any restitution payments defendant made pursuant to the agency's directions and to rescind its administrative "Notice of Action." At the same time, however, because the county did not "actually litigate" the fraud question in the administrative proceeding, the majority has simply disregarded the well-established contours of the collateral estoppel doctrine in holding that the People are precluded from proving defendant's guilt in this separate "cause of action"—the criminal pros-

---

[1]This element of the collateral estoppel—or "issue preclusion"—doctrine remains fully viable today. Section 27 of the Restatement Second of Judgments, published in early 1982, states: "When an issue of fact or law *is actually litigated* and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Italics added.) Comment (e) to section 27 explains the basic rationale of the "actually litigated" limitation: "*Issues not actually litigated.* A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation...." (P. 256.)

[2]The hearing officer's decision states in this regard: "Since the county has not established its case, or even attempted to present a case, it must be found that the county lacks authority or the right to adjust for alleged overpayment or demand repayment of the alleged overissuance of food stamps."

ecution. On this basis alone, the majority's application of collateral estoppel is unquestionably erroneous.[3]

## II

In addition, although it is not necessary to reach the question in this case, I think the majority's application of collateral estoppel would be improper even if the question of defendant's fraud had been actually litigated at the administrative fair hearing.

The majority concedes that it can cite no case in which an administrative determination has been held to bar a subsequent criminal prosecution.[4] In *People v. Demery* (1980) 104 Cal.App.3d 548 [163 Cal.Rptr. 814], perhaps the closest California case in point, the court held directly to the contrary, finding that an administrative determination by the State Board of Medical Quality Assurance which absolved the defendant doctor of a charge of improper furnishing of drugs (Health & Saf. Code, § 11154) did not operate as collateral estoppel in a subsequent criminal prosecution against the doctor on the same charges. In reaching this conclusion, the *Demery* court explained, inter alia, that "[t]he objective of [the administrative] proceeding was policing licensing requirements rather than making a determination of

---

[3]*Neither Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], nor *United States* v. *Utah Constr. Co.* (1966) 384 U.S. 394 [16 L.Ed.2d 642, 86 S.Ct. 1545] supports the majority's position. In *Teitelbaum Furs*, plaintiff's president had fully litigated the question of his guilt in the prior criminal proceeding, and our court simply held that under those circumstances the plaintiff corporation could not avoid the collateral estoppel effect of the earlier judgment by asserting that its president had not presented all of the relevant existing evidence at the first trial. Similarly, in *Utah Construction Co.*, the issue in dispute had been actually litigated in the earlier administrative proceeding, and the United States Supreme Court gave no indication whatsoever that collateral estoppel principles should be more expansively applied to administrative determinations than to court decisions.

Insofar as the case of *Fitzgerald* v. *Herzer* (1947) 78 Cal.App.2d 127, 132 [177 P.2d 364] purports to hold that a default judgment invokes the "collateral estoppel"—as opposed to the "merger" or "bar"—aspect of res judicata, the decision is clearly contrary to this court's subsequent decision in *Clark* v. *Lesher, supra,* and the host of collateral estoppel decisions following *Clark.* As the commentary to section 27 of the Restatement Second of Judgments explains: "In the case of judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [collateral estoppel or issue preclusion] does not apply with respect to any issue in a subsequent action." (Rest.2d Judgments, § 27, com. (e), p. 257.)

[4]Indeed, the majority has not even cited a single case in which a *civil judgment* against the government or a government agency has been found to preclude a subsequent criminal prosecution.

criminal guilt or innocence. While administrative hearings employ fact-finding methods that are similar to those employed in criminal trials, the standards of admissibility differ and the objectives sought are not identical." (104 Cal.App.3d at p. 561.)

Contrary to the majority's suggestion, this reasoning is fully applicable to this case. Indeed, on brief reflection, it becomes evident that there are many administrative bodies which in the course of their ordinary duties frequently pass on factual disputes concerning conduct that may also be the subject of a criminal prosecution. Professional licensing boards, prison disciplinary panels, local school boards, the State Personnel Board, labor relations boards and the like may all have occasion to determine—for their own specialized purposes—whether or not an individual committed alleged misconduct. In granting an administrative body the authority to make this factual determination within a particular administrative context, the Legislature surely did not contemplate that the administrative decision would be routinely conclusive on the ultimate issue of an individual's guilt *or innocence* of criminal charges relating to the same factual incident. In this setting, as *Demery* recognizes, the significant differences in both the jurisdiction and the purposes of the administrative and criminal proceedings compel the conclusion that the administrative decision is not binding in a subsequent criminal prosecution. (Cf. Rest.2d Judgments, § 28(3).)[5]

Indeed, from a practical perspective, the majority's conclusion appears particularly unsound and short-sighted in the welfare fair hearing context. (See Welf. & Inst. Code, §§ 10950-10965.) The statutory

---

[5]The introduction of the Restatement Second of Judgments makes it clear that its provisions are not intended to apply directly to "res judicata in criminal proceedings, that is, [to] the effects of a prior criminal or civil judgment in a subsequent criminal prosecution." (P. 2.) The introduction nevertheless suggests that "the analysis of various problems considered herein may have application to cognate problems arising in criminal litigation." (*Id.*) In this light, the exception to the general collateral estoppel doctrine embodied in section 28(3) may shed some light on the issue before us. That section provides: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: ... (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them ...." (See also Rest.2d Judgments, § 83(4) ("An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that: ... (b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.").)

scheme reveals that the fair hearing mechanism is intended to provide an aggrieved welfare recipient with a speedy (see *id.*, § 10952) and informal (see *id.*, § 10955) means to challenge an administrative action which may reduce or terminate vitally needed social service benefits. Judicial authorities have frequently observed that, as applied to this kind of administrative proceeding, "[c]ollateral estoppel is by no means an unmixed blessing" (*Kelly* v. *Trans. Globe Travel Bureau, Inc.* (1976) 60 Cal.App.3d 195, 202 [131 Cal.Rptr. 488]); if the decision at the fair hearing is given important—indeed, potentially determinative —consequences for an upcoming criminal prosecution, the entire atmosphere and manner of conduct of the fair hearing will be significantly changed, and the administrative hearing will be transformed, in effect, into the first stage of the criminal prosecution itself. To insure that the People's opportunity to prove the criminal charges is not lost, the county will be required to marshall all of the prosecution's potential witnesses and evidence at the administrative level; prehearing delays and lengthy hearings will be the predictable result. Furthermore, the majority's conclusion will have the unfortunate effect of requiring district attorney offices to allocate a greater proportion of their ever-decreasing resources to administrative matters, rather than reserving these scarce resources for the actual prosecution of serious criminal cases in court.

In contrast to the present majority opinion which takes no note of these practical considerations, our court in *In re Dennis B.* (1976) 18 Cal.3d 687 [135 Cal.Rptr. 82, 557 P.2d 514] gave full recognition to similar practical concerns in holding that the filing and adjudication of a routine traffic infraction should not operate, under Penal Code section 654, as a bar to the subsequent filing of misdemeanor or felony charges arising out of the same course of conduct. In *Dennis B.*, Justice Mosk, writing for a unanimous court, explained that "[t]he state's substantial interest in maintaining the summary nature of minor motor vehicle proceedings would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings . . . ." (18 Cal.3d at p. 695.) Justice Mosk noted the various procedural innovations that had been implemented to further the interest in expedited proceedings, pointing in particular to "the use of highway patrol officers . . . to perform certain tasks for which deputy district or city attorneys are usually required," and concluded that "[t]his type of flexibility benefits all parties: defendants gain a swift and inexpensive disposition of their cases without risk of major penalties; and the prosecution, the court system and ultimately the public benefit because judicial and law

enforcement resources are freed to concentrate on serious criminal behavior." (*Ibid.*)

The similarities between *Dennis B.* and this case are evident: if the results of an administrative fair hearing are limited to the administrative context, the hearing can proceed in a speedy, informal manner with a social worker or comparable agency employee presenting the agency's case to the hearing officer. If, however, the "stakes" at the fair hearing are raised so that the administrative decision may be determinative of the pending criminal prosecution—as the majority proposes—then the fair hearing will inevitably become a full dress rehearsal for the criminal trial, and resources which should be allocated to the trial of serious criminal cases will be diverted into the administrative process.

### III

In sum, I submit that the collateral estoppel doctrine is inapplicable in this case for two reasons: (1) the issue of defendant's guilt or innocence of welfare fraud was not "actually litigated" at the administrative fair hearing, and (2) even if it had been actually litigated, such an administrative determination should not be binding in a subsequent criminal prosecution.

I would reverse the judgment.