Opinion
WILLIAMSON, J.
The People appeal from the order of the court below dismissing charges against respondent on the grounds that the district attorney is precluded from litigating the issues raised in this case under the rule of People v. Sims (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321].
Statement of Facts
The facts as presented at proceedings in the court below are as follows.
*Supp. 4 Respondent was employed by BART as a station manager at the Glen Park BART station. In the summer of 1984, BART became concerned about a pattern of theft from ticket dispensing machines at the Glen Park station; an investigation by BART police, including surveillance of the machine in question, machine no. 5629, was started on August 11, 1984. The officers put marked one dollar bills into the machine to establish a pattern of theft; the bills were marked with a crayon mark visible only under ultraviolet light. According to the surveillance officers, 24-hour surveillance of the machine commenced November 2, 1984, after earlier investigation had revealed that money shortages in the machine were occurring primarily on the weekends, when respondent worked.
Respondent was arrested and charged with the thefts on November 3, 1984.
On November 4, 1984, he was notified that he was being discharged pending a formal hearing for violation of rule 117 of BART’s Operations, Rules and Procedures Manual (theft of BART District property).
On November 5, BART obtained a search warrant and searched respondent’s van; the officers allegedly found several marked bills in the van, identified as having been placed by them in ticket machine No. 5629.
At the original formal hearing on BART’s termination of respondent, BART prevailed. Respondent was notified after that hearing that the effective date of the termination was December 29, 1984.
Respondent’s union subsequently appealed the matter to arbitration for a final and binding decision. The parties to the arbitration were BART District and Amalgamated Transit Union. Hearings were held at the Metro Center in Oakland and at the Glen Park BART station in San Francisco. The arbitrator gave the parties a full opportunity to examine and cross-examine witnesses, to introduce evidence and exhibits, and to argue. The arbitrator did have the power to subpoena witnesses. Following the arbitration, a formal written decision was given to the parties.
Respondent’s defense at the arbitration hearing rested largely on his contention that he had been framed by the BART police. The arbitrator ultimately found that BART had failed to sustain its burden of proof beyond a reasonable doubt, since BART failed to prove that respondent had at any time constructive possession of the marked bills.
In September of 1985, respondent was tried for alleged violations of Penal Code sections 459 and 487, subdivision 1 arising out of the November 1984 incident. The trial resulted in a hung jury, and the case was set for retrial.
*Supp. 5 At the hearing on the motion to dismiss criminal charges, counsel for respondent submitted a declaration stating his belief that BART management and police officers “used their influence to have this case prosecuted in the first instance and to have it reprosecuted.” He also stated that he was informed and believed “and therefore alleges that if Mr. Dawkins had not pursued his arbitration rights to get back his job, this case would not be reprosecuted.” The district attorney’s office did not object to this declaration, but did submit its own contrary declaration in an untimely fashion.
The trial court found that, under People v. Sims, supra, 32 Cal.3d 468, first, the arbitration hearing was adjudicatory and impartial in nature; second, that both parties had the opportunity for review in the superior court; third, that the issue to be litigated in the criminal proceeding was identical to that litigated in the arbitration, i.e., “whether or not the defendant committed petty theft,” and finally, that “the interest of BART and the interest of the District Attorney is close enough in that they represent not their own rights, but the rights of the government.” This last was partially “based on what Mr. Hanlon informed the court regarding the joint role in investigating this case, in subpoenaing the witnesses and so forth.”
Discussion
I. Collateral Estoppel
The California Supreme Court has enumerated threshold requirements similar to those set out in the Restatement of Judgments, Second, for a finding of issue preclusion. Collateral estoppel can bar relitigation of an issue if “(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be irelitigated; if (2) the previous [proceeding] resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.” (People v. Taylor (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622]. The nature of the previous proceedings is also a factor; collateral estoppel can be applied to decisions made by administrative agencies “ *[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.’” (People v. Sims, supra, 32 Cal.3d at p. 479.)
It is clear that the issue to be adjudicated in both proceedings in this case is identical; likewise, it is clear that the first proceeding was adjudicatory in nature and that the arbitrator was acting in a judicial capacity. If *Supp. 6 the requirement of privity is met, then, using the analysis set forth in People v. Sims, 32 Cal.3d 468, the district attorney’s case could be barred.
The existence of the relationship of privity is a question of law. “[T]he term ‘privity’ in itself does not state a reason for either including or excluding a person from the binding effect of a prior judgment, but rather it represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is suffciently close to afford application of the principle of preclusion.” (Vestal, Preclusion/Res Judicata Variables: Parties (1964) 50 Iowa L.Rev. 27, 45.)
Preclusion of litigation of an issue is contingent on a previous and adequate opportunity to be heard. (Blonder-Tongue v. University Foundation (1971) 402 U.S. 314, 329 [28 L.Ed.2d 788, 800, 91 S.Ct. 1434].) Issue preclusion analysis relating to privity, therefore, requires consideration of both due process concerns and policy interests not rising to the level of constitutional requirements. Here, however, since it is the government against whom preclusion is sought, there is no implication of constitutional due process, since the purpose of the Fifth and Fourteenth Amendments is to protect against the government, not to provide protection for the government. In the absence of a required constitutional analysis, “[p]rivity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity.” (People v. Sims, supra, 32 Cal.3d at p. 486.) The decision ultimately rests on a determination of justice and equity. (Blonder-Tongue, supra, 402 U.S. at p. 334 [28 L.Ed.2d at p. 802].)
II. Equitable Considerations
In People v. Sims, supra, 32 Cal.3d 468, the court considered that both the district attorney’s office and the department of social services were county agencies, that both acted as representatives of the state, that because a welfare hearing and demand for restitution were prerequisites to criminal prosecution, they jointly investigated allegations of welfare fraud via a special investigative unit for suspected welfare fraud which acted as a liaison between the county and law enforcement agencies. Other considerations included judicial economy, the possibility of inconsistent judgments, and the interest of protecting a defendant against harassment.
Here, a BART hearing or arbitration was not a prerequisite to criminal prosecution, and in fact the commencement of criminal proceedings preceded the quasi-judicial proceeding. The close relationship in the *Supp. 7 investigative process was not like that in Sims, supra, 32 Cal.3d 468, where there was a special investigative unit whose role was to be a liaison between the district attorney’s office and the department of social services.
The only evidence to support the trial court’s finding of a joint investigation, in fact, was a declaration by Stuart Hanlon, counsel for respondent. This declaration consisted entirely of hearsay, speculation, allegations and unsupported statements of fact. The assistant district attorney present at the hearing on the motion to dismiss did not object to the trial court’s consideration of this declaration, but instead offered an untimely counterdeclaration. Since the district attorney acquiesced in the erroneous admission of this declaration by the trial court, the People do not have the right to attack this error on appeal.[1]
Even assuming some type of joint investigation by the district attorney’s office and BART, however, a finding of privity is not proper in this case.
The importance of allowing a criminal prosecution to go forward may outweigh the economy concerns of collateral estoppel. (Standefer v. United States (1980) 447 U.S. 10 [64 L.Ed.2d 689, 100 S.Ct. 1999].) It would not be fair to the People of this state to bind them by a decision made at a hearing which evolved from an employment termination dispute. Although the issue of fact may have been identical, the motivation to litigate was not the same.
The purpose of the criminal justice system is to promote personal security and the stability of society by preventing conduct that unjustifiably threatens individual or public interests. The district attorney has the distinct goals of deterring crime specifically and generally, and of seeing that offenders are punished, and, if necessary, incarcerated. BART has no interest in its employees after they are terminated. It has no interest in incarcerating them to prevent recurrences of crimes, or in generally deterring thieves not in the employ of BART.
The interests in protecting a defendant against harassment and the interest in preventing possibly inconsistent judgments are both outweighed in *Supp. 8 this case by the People’s interest in being represented by the district attorney’s office. In Sims, supra, 32 Cal.3d 468, the department of social services and the district attorney’s office shared the goal of obtaining restitution. BART’s goal in this case, however, was to protect itself from having to pay back wages for an unjust termination and to rid itself of what it considered to be an undesirable employee.
The decision of the court below is reversed and the case is remanded for further proceedings in accordance with this opinion.
Hanlon, P. J., and Grant, J., concurred.

“Counsel may not elect to introduce additional evidence to counteract evidence wrongfully received by the trial court, speculating upon a favorable judgment, and at the same time reserve his objection in the event judgment should be adverse to him.” (Gimbel v. Laramie (1960) 181 Cal.App.2d 77, 86 [5 Cal.Rptr. 88].) “The most obvious types of implied waiver arise from failure to object to the ruling or proceeding.” (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 307, p. 317.)