72 Cal.Rptr.3d 419 (2008)
159 Cal.App.4th 1349
Larry BRAND, Plaintiff and Appellant,
v.
REGENTS OF The UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.
No. D049350.
Court of Appeal of California, Fourth District, Division One.
January 18, 2008.
*422 Joel C. Golden, San Diego, CA, for Plaintiff and Appellant.
John S. Adler, Littler Mendelson, PC, San Diego, CA, for Defendants and Respondents.
IRION, J.
Larry Brand appeals from a judgment entered after the trial court sustained the demurrer of defendants the Regents of the *423 University of California (the Regents), Alan Paau, John Woods, Eduardo Macagno, Michael Melman and Daniel Wyman (collectively, defendants)[1] to Brand's lawsuit. The lawsuit alleged that defendants unlawfully retaliated against him for making disclosures protected by the California Whistleblower Protection Act (Gov.Code, § 8547 et seq.).[2]
We conclude that except with respect to the third cause of action against Melman (and the second cause of action, which is not at issue in this appeal), the trial court erred in sustaining the demurer. Accordingly, we reverse the judgment in part.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Brand's Whistleblowing Activity and Complaints of Retaliation

According to the operative second amended complaint in this action (the complaint), Brand was employed by the Regents as a senior licensing officer in the Technology Transfer and Intellectual Property Service office (TTIPS) at the campus of the University of California, San Diego (UCSD). Brand alleges that he discovered "serious and unlawful fraud and misappropriation of funds," self-dealing and other conflicts of interest involving his supervisor, Paau, and then, beginning in March 2001, he "made a number of internal reports aimed at alerting UC management to the state of affairs." According to Brand, his disclosures became known to Paau, who, along with Woods, Melman, Wyman and Macagno, retaliated against Brand.[3] Brand claims that the retaliation included withholding salary increases, giving him unjustified negative performance reviews, maintaining a hostile work environment, taking work away from him, threatening him with termination, and ultimately terminating him in June 2003.
In response to the perceived retaliation. Brand filed several internal written complaints with UCSD's locally designated officer (LDO) under the University of California Policy for Protection of Whistleblowers from Retaliation and Guidelines for Reviewing Retaliation Complaints (UC Whistleblower Protection Policy).[4] In each of his internal complaints, Brand complained that he was retaliated against in violation of the California Whistleblower Protection Act (§ 8547 et seq.).
Brand's first internal complaints were filed on September 18 and September 22, 2002 (the September 2002 grievances) and focused on unsatisfactory performance evaluations, the loss of a salary increase and pressure to offer his resignation. The September 2002 grievances were addressed *424 through a two-step internal process premised on the procedures set forth in the UC Whistleblower Protection Policy and policy 70 of the University of California's Personnel Policy for Staff Members (PPSM 70).[5] At the first step of the procedure, Vice Chancellor Woods responded with a written denial on October 30, 2002. At the second step, in response to Brand's request, a factfinding meeting was held in February 2003. In April 2003, the fact finder issued a report. The fact finder's report was submitted to Rogers Davis, the Assistant Vice Chancellor for Human Resources, who relied on the report to formally deny the September 2002 grievances. Brand asserts, and defendants do not contest, that because of the senior professional classification to which Brand belonged, he was not entitled under the applicable policy to appeal to a third step of the review process.[6] Thus, Davis's decision became the final administrative response to the September 2002 grievances.
On October 11, 2002, shortly after he filed the September 2002 grievances, Brand filed another internal complaint, alleging that in late September 2002 he was retaliated against by being relocated to a different office and removed from a particular assignment (the October 2002 grievance). The October 2002 grievance specifically mentioned conduct by Paau, Macagno, Melman and Woods. According to Brand, Woods rejected the October 2002 grievance at step 1 of the review process, and Brand thereafter filed a request for a step 2 review on November 25, 2002. Neither the fact finder's April 2003 report on the September 2002 grievances nor Assistant Vice Chancellor Davis's May 2003 denial of the September 2002 grievances addressed the October 2002 grievance.
Before the October 2002 grievance was resolved, Brand filed internal complaints on June 19 and June 30, 2003 (the June 2003 grievances). The June 2003 grievances alleged that additional acts of retaliation occurred after the October 2002 grievance and that Brand was eventually terminated in retaliation for being a whistleblower. Vice Chancellor Woods denied the June 2003 grievances on July 21, 2003, in step 1 of the applicable two-step review process. On August 1, 2003, exercising his right to proceed to step 2 of the review process, Brand filed a written appeal requesting that a factfinding proceeding be conducted.
Barbara Stewart, a management services officer in the UCSD Department of Sociology, held a factfinding meeting on September 29, 2003.[7] Brand attended the *425 meeting, representing himself. Paau and Wyman represented the TTIPS office. The factfinding meeting, as described in Stewart's report, consisted of Stewart reading an opening statement to the parties, and Brand and the TTIPS office orally stating their positions and submitting certain documentary evidence. Stewart's factfinding report makes clear that she communicated with certain relevant witnesses outside of the September 29, 2003 factfinding meeting, and she considered information gathered from those witnesses in reaching her findings.
Following the September 29, 2003 factfinding meeting, Stewart did not issue her factfinding report until more than seven months later, on May 11, 2004. The report expressly addressed the June 2003 grievances. Further, although the report did not specifically acknowledge the existence of Brand's October 2002 grievance or state that it was addressing that grievance, the text of the report discusses the facts put at issue in the October 2002 grievance.
On July 6, 2004, Assistant Vice Chancellor Davis issued a final decision denying the October 2002 grievance and the June 2003 grievances, relying on Stewart's May 11, 2004 factfinding report and on documentary evidence. Davis stated that he found "no evidence to convince me that, the decision ... to terminate Dr. Brand's employment was linked to a protected disclosure by Dr. Brand" and that he found "no nexus between Dr. Brand's protected disclosures and other decisions made impacting him in the workplace." Because Brand was not entitled to appeal to a third step of the review process, Davis's decision became the final administrative action on the October 2002 grievance and the June 2003 grievances.

B. Brand's Lawsuit and Defendants' Demurrer

Brand filed this lawsuit in June 2005. The operative complaint alleges three causes of action and seeks compensatory and punitive damages as well as reinstatement of Brand to his former position. The first cause of action alleges that all of the defendants unlawfully retaliated against Brand in violation of section 8547.10, which prohibits retaliation against University of California employees who make protected disclosures. The second cause of action alleges that the Regents violated Labor Code section 1102.5.[8] The third cause of action alleges that all of the defendants, except the Regents, violated section 8547.11, which prohibits interference with an employee's attempt to make a protected disclosure.[9]
Defendants filed a demurrer to the complaint, asserting several arguments. The first argument centered on the text of section 8547.10, subdivision (c), which limits the circumstances in which a party may *426 bring a suit for damages under section 8547.10. That subdivision states:
"In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee ... having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party.... However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the [designated university officer], and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents." (§ 8547.10, subd. (c), italics added.)
Focusing on the portion of the statute italicized above, the complaint alleged that an action for damages was authorized because neither the October 2002 grievance nor the June 2003 grievances were resolved "within the time limits established for that purpose by the regents," which according to the complaint comprised a total time limit of 156 days. However, in their demurrer defendants argued that the complaint's allegation of untimeliness was defective. Pointing out that the complaint attached three different complaint resolution policies as exhibits,[10] defendants argued that at least one of the policies attached to the complaint (UCOP Procedure 70) was not applicable according to Brand's own admission in an earlier motion. Defendants also argued that one of the other policies attached to the complaint (the UCSD local procedures for implementing PPSM 70) did not set any time limit for the factfinding process. Defendants, however, did not attack the applicability of the time limits set forth in the third document attached to the complaintthe UC Whistleblower Protection Policy.
Second, defendants argued that the demurrer should be granted as to all of the causes of action because Brand had failed to exhaust his judicial remedies by filing an action for damages without first challenging the Regents' decision through a writ of mandate.
Third, defendants argued that because certain conduct that Brand objected to in the complaint was admittedly not the subject of his internal grievances, Brand had not exhausted his administrative remedies as to those issues.[11]
Fourth, defendants argued that any posttermination conduct complained of by *427 Brand was not covered by sections 8547.10, 8547.11 or Labor Code section 1102.5.
Finally, defendants argued that the allegations against the individual defendants were barred by the privilege set forth in Civil Code section 47, subdivision (b), or alternatively that the individual defendants were entitled to absolute governmental immunity under section 821.6.

C. The Trial Court's Ruling

The trial court sustained the demurrer as to all three of Brand's causes of action. First, the trial court concluded that Brand's claims for violation of sections 8547.10 and 8547.11 were barred by section 8547.10, subdivision (c). The trial court interpreted that provision to mean that an action for damages is barred whenever the Regents have reached a decision on a grievance, even if the decision is not timely. Citing section 8547.10, subdivision (c) and Campbell v. Regents of University of California (2005) 35 Cal.4th 311, 327, 25 Cal.Rptr.3d 320, 106 P.3d 976 (Campbell), the trial court stated, "The Court believes the pertinent fact in this case to be that the Regents, whether timely or not, reached a decision on Plaintiffs grievances prior to this action being filed. Therefore, an action for damages is not available. [B]ecause the Regents issued a decision even if latebefore the filing of this action, Plaintiffs' claims for violation of [sections] 8547.10 and 8547.11 are barred by [section] 8547.10[, subdivision](c)."
Second, although the trial court's reasoning could be more clear, its appears that in addition to relying on its interpretation of section 8547.10, subdivision (c), the trial court also sustained the demurrer for the independent reason that it believed Brand was required, under the doctrine of judicial exhaustion, to successfully challenge the Regents' denial of his grievances through a writ of mandate before he would be able to bring a lawsuit for damages.[12]
Third, the trial court also accepted defendants' arguments that posttermination conduct could not support any of the statutory claims asserted in the complaint, and that Brand's complaint was barred with respect to those issues on which he had not exhausted his administrative remedies.
The trial court specifically found it unnecessary to rule on the contention of the individual defendants that the claims against them are barred by privilege or that they are protected by governmental immunity.

D. Brand's Appeal

Brand appeals from the judgment. He limits his appeal to challenging the trial court's ruling regarding the first and third causes of action (i.e., for violation of section 8547.10 by all defendants, and section 8547.11 by the individual defendants).[13] Brand first argues that the trial court erred in ruling that a plaintiff may not bring a damages suit under section 8547.10, subdivision (c) after the Regents have reached a decision on an internal *428 grievance, even when that decision was untimely. Second, Brand argues that the trial court erred in ruling that he was required, under the doctrine of judicial exhaustion, to successfully challenge the Regents' denial of his grievances through a writ of mandate before being permitted to bring a damages action. Third, Brand argues that the trial court erred in ruling that his third cause of action against the individual defendants under section 8547.11 was barred to the extent that he did not exhaust his administrative remedies.

II

DISCUSSION

A. Standard of Review

"`On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.'" (Los Altos El Granada Investors v. City of Capitola (2006) 139 Cal.App.4th 629, 650, 43 Cal. Rptr.3d 434.) In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (Howard Jarvis Taxpayers Assn. v. City of La Habra (2001) 25 Cal.4th 809, 814, 107 Cal.Rptr.2d 369, 23 P.3d 601.) Further, to the extent that the issue before us is one of statutory interpretation, we review this question of law de novo. (Bialo v. Western Mutual Ins. Co. (2002) 95 Cal.App.4th 68, 76-77,115 Cal.Rptr.2d 3.)

B. Did the Trial Court Err in Concluding that Brand's Suit for Damages Under Section 8547.10, Subdivision (c) Was Barred Under the Terms of that Statute Even If the Regents[ Decision Was Untimely?

We first consider Brand's argument that the trial court erred in ruling that a plaintiff may not bring a damages suit under section 8547.10, subdivision (c) after the Regents reach a decision on an internal grievance, even when that decision was untimely.
We approach the analysis of the issue in two separate steps. First, premised on the allegations in the complaint and the documents of which the trial court took judicial notice, we inquire whether Brand has a viable claim that the Regents' decision on the October 2002 grievance and the June 2003 grievances was untimely. Second, if we determine that Brand does have a viable claim that the decision was untimely, we will proceed to analyze whether the trial court erred in interpreting section 8547.10, subdivision (c) to mean that a plaintiff may not bring a damages suit under that provision after the Regents have decided an internal grievance, even if the Regents' decision was untimely.

1. Brand Has a Viable Claim that the Regents' Decision Was Untimely

As we have explained, the complaint alleges that the Regents were required to decide Brand's internal complaints of retaliation within 156 days from the time, they were assigned to the fact finder. As we also have explained, the complaint attaches the three complaint resolution policies from which it purports to derive this 156-day deadline. Defendants take issue with Brand's claim that a 156-day deadline applies, and they submit a fourth complaint resolution policy (i.e., PPSM 70), which they claim has some relevance in determining the applicable deadline.
The trial court did not attempt to determine whether the complaint's allegation of a 156-day deadline is supported by the judicially noticed documents and the documents *429 attached to the complaint, nor did it attempt to determine which of the complaint resolution policies cited by the parties were, in fact, applicable. Similarly, we do not undertake to determine the correctness of Brand's allegation of a 156-day deadline or to determine whether some of the complaint resolution policies discussed by the parties are inapplicable. Instead, for the purposes of our analysis, we find it sufficient to rely on the deadline set forth in one of the documents that all the parties appear to agree applies here: the UC Whistleblower Protection Policy.
The UC Whistleblower Protection Policy provides that "[w]hen an employee files a complaint which contains an eligible allegation of retaliation under an existing University grievance or complaint resolution procedure" and, as here, "the complaint is filed under a complaint resolution procedure containing factfinding as specified in University policies as part of the final available step ..., the RCO will serve as the factfinder." The policy provides that "[t]he RCO shall present findings of fact based on the evidence and factual conclusions to the Chancellor within 120 days from the date on which the complaint was assigned to the RCO unless an extension is granted by the LDO." (Italics added.)[14]
Defendants attempt to dispute the mandatory nature of the 120-day deadline for the RCO to present findings of fact to the Chancellor. First, they point out that the UC Whistleblower Protection Policy provides that if a complaint is filed under an applicable grievance or complaint resolution process instead of directly with the LDO, "the LDO will hold the retaliation complaint in abeyance until all of the steps preceding hearing, arbitration, or factfinding have been completed." (Italics added.) However, because the cited policy provision deals with holding a complaint in abeyance preceding the initiation of the RCO's factfinding procedures, it plainly does not extend the 120-day deadline for the RCO to present findings of fact. Second, defendants point out that under the policy the Chancellor may "remand the findings to the RCO if further investigation is needed before making a decision." This provision, too, has no impact on the 120-day deadline, because it does not impact the timeline under which the RCO initially must present a factfinding report to the Chancellor.
The UC Whistleblower Protection Policy, which contains the 120-day deadline, states that it is "derived from the California Whistleblower Protection Act." The 120-day deadline thus appears to fit the definition of one of the "time limits established for that purpose [i.e., reaching a decision on an internal complaint of retaliation for making a protected disclosure] by the regents" as set forth in section 8547.10, subdivision (c). We accordingly conclude that the UC Whistleblower Protection Policy's 120-day deadline for the RCO to present findings of fact to the Chancellor, is one of the "time limits established ... by the regents" referred to in section 8547.10, subdivision (c).
Here, Brand's complaint alleges that the June 2003 grievances were assigned to the RCO on approximately August 1, 2003. He does not allege the date on which the *430 October 2002 grievance was assigned to the RCO.[15] However, it is clear from the judicially noticed documents that the factfinding meeting regarding these grievances took place on September 29, 2003.[16] Thus, the relevant complaints were assigned to the RCO (i.e., Stewart) no later than September 29, 2003, when Stewart conducted the factfinding meeting. However, Stewart did not issue her report or present it to the Chancellor until at least May 11, 2004, which is 225 days after the factfinding meeting.
Because the judicially noticed documents establish that Stewart failed to present a factfinding report to the Chancellor within 120 days of the date the complaint was assigned to her, Brand appears to have a viable claim that the Regents failed to reach a decision within the applicable time limits.[17]

2. Section 8547.10, Subdivision (c) Permits a Suit for Damages, Even If the Regents Have Reached a Final Decision on an Internal Complaint, As Long As the Decision Is Not Timely

Having concluded that Brand has a viable claim that the Regents failed to reach a timely decision on the October 2002 grievance and, the June 2003 grievances, the next issue is whether, because of that untimely decision, Brand is permitted to bring a suit for damages pursuant to section 8547.10, subdivision (c).
Brand interprets section 8547.10, subdivision (c) to mean that because he pursued an internal administrative complaint and the Regents did not make a timely decision on the internal complaint, he was permitted to file a suit seeking damages. The trial court, on the other hand, read section 8547.10, subdivision (c) to mean that a damages suit is barred as long as the Regents reached a decision on the internal complaint, even if the decision was not timely. On appeal, defendants urge us to adopt the trial court's interpretation. As we will explain, we agree with Brand, and we reject the trial court's reading of the statute.
Our analysis of section 8547.10, subdivision (c) begins with the plain language of the statute, and if that language is unambiguous, our analysis ends there. "As with any statutory construction inquiry, we must look first to the language of the statute. `To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.] If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. [Citation.] `If there is no *431 ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.'" Diamond Multimedia Systems, Inc. v. Superior Court (1999) 19 Cal.4th 1036, 1047, 80 Cal.Rptr.2d 828, 968 P.2d 539 (Diamond Multimedia.)
Directing our attention to the language of section 8547.10, subdivision (c), the meaning appears clear and unambiguous.
"In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee ... having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party.... However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the [designated university officer], and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents." (§ 8547.10, subd. (c), italics added.)
The final sentence plainly states that to bring a suit for damages, two prerequisites must have occurred. First, the plaintiff must have properly filed an internal complaint. Second, the university must have failed to reach a decision within the time limits established by the Regents. If these two prerequisites are met, a plaintiff may file a suit for damages.
If we were to read the statute, as the trial court did, to mean that a damages suit is disallowed whenever the university reaches a decision on the internal complaint, even if the decision is not timely, we would be required to disregard a portion of the statutory language. Specifically, we would be required to disregard the phrase"within the time limits established for that purpose by the regents." We may not adopt an interpretation of a statute that ignores a portion of the statutory language. "`In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose....'" (California Teachers Assn. v. Governing Bd, of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634, 59 Cal. Rptr.2d 671, 927 P.2d 1175, italics added.) "[Interpretations which render any part of a statute superfluous are to be avoided." (Wells v. One2One Learning Foundation (2006) 39 Cal.4th 1164, 1207, 48 Cal. Rptr.3d 108, 141 P.3d 225.)[18]
*432 Instead of expressly relying on the statutory language for their interpretation of section 8547.10, subdivision (c), both the trial court and defendants rely on dictum in Campbell, supra, 35 Cal.4th 311, 327, 25 Cal.Rptr.3d 320, 106 P.3d 976. Campbell considered whether University of California employees are required to exhaust their administrative remedies before filing suit for retaliatory termination under two specific "`whistleblower' statutes"section 12653, subdivision (c) and Labor Code section 1102.5. (Campbell, at p. 317, 25 Cal. Rptr.3d 320, 106 P.3d 976.) In the course of considering whether an employee is required to exhaust administrative remedies before filing suit under section 12653, subdivision (c), Campbell addressed the appellant's argument that because section 8547.10, subdivision (c) contained an explicit administrative exhaustion requirement, but section 12653, subdivision'(c) did not, the court should not read an administrative exhaustion requirement into section 12653, subdivision (c) when the legislature failed to include one. (Campbell, at p. 327, 25 Cal.Rptr.3d 320, 106 P.3d 976.)
Campbell included a short paragraph describing the administrative exhaustion requirement that is set forth in section 8547.10, subdivision (c).
"[T]he statute permits aggrieved university employees to file a damages action provided they have followed the administrative procedures and filed an administrative complaint before filing their lawsuit. (§ 8547.10, subd. (a).) Of note here, the employee may not proceed with a court action against the university unless that institution has failed to reach an administrative decision on the action within specified time limits. (`§ 8547.10, subd. (c).) In such a case, the employee may file a lawsuit for damages even though the administrative complaint is pending. If, by contrast, the university has reached a decision on the administrative action, the statute does not authorize any statutory damages action." (Campbell, supra, 35 Cal.4th at p. 327, 25 Cal.Rptr.3d 320,106 P.3d 976.)
Defendants argue that we should rely on the wording in the last sentence of this paragraph to conclude that our Supreme Court has interpreted section 8547.10, subdivision (c) to mean that "if ... the university has reached a decision on the administrative action, the statute does not authorize any statutory damages action." (Campbell, supra, 35 Cal.4th at p. 327, 25 Cal.Rptr.3d 320, 106 P.3d 976.) They urge that we follow this interpretation without regard to the actual statutory language, which refers to the preclusive effect of a timely decision by the university, not the preclusive effect of any decision by the university. As we will explain, we reject defendants' attempt to rewrite the clear statutory language of section 8547.10, subdivision (c) by focusing on a single sentence of dictum in Campbell.
Read as a whole, the relevant paragraph in Campbell sets forth an interpretation of section 8547.10, subdivision (c) that is consistent with the clear statutory language. Indeed, the second sentence of the paragraph accurately reflects the plain meaning of the statute, as it states that "the employee may not proceed with a court action against the university unless that institution has failed to reach an administrative decision on the action within specified time limits." (Campbell, supra, 35 Cal.4th at p. 327, 25 Cal.Rptr.3d 320, 106 P.3d 976, italics added). In what appears to be inexact drafting, the final sentence of the paragraph restates this concept in the negative and, perhaps inadvertently, drops the timeliness qualifier. However, in light *433 of the accurate description of section 8547.10, subdivision (c) earlier in the paragraph, which unambiguously includes the concept of timeliness, we do not read Campbell to be communicating, through dictum, an intention to rewrite the clear language of the statute to state that a plaintiff may not bring a damages suit following the university's decision on an internal complaint, even when that decision was not timely.
Accordingly, we conclude that the clear and unambiguous language of section 8547.10, subdivision (c) allows Brand to proceed with his suit for damages because he has pled a viable claim that the Regents failed to reach a timely decision on the October 2002 grievance and the June 2003 grievances.[19]

C. The Doctrine of Judicial Exhaustion Does Not Apply

We next consider whether the trial court erred in concluding that the doctrine of judicial exhaustion required Brand to successfully challenge the Regents' decision on the October 2002 grievance and the June 2003 grievances through a writ of mandate before he was permitted to bring a suit for damages.
The doctrine of judicial exhaustion is premised on the concept of collateral estoppel. "The underpinnings of this rule of exhaustion of judicial remedies ... are buried in the doctrine of res judicata or that portion of it known as collateral estoppel...." (Knickerbocker v. City of Stockton (1988) 199 Cal.App.3d 235, 241, 244 Cal.Rptr. 764.) Thus, "while administrative exhaustion is a fundamental rule of procedure," "[j]udicial exhaustion is a species of res judicata." (Ibid.) Under the doctrine of judicial exhaustion, "collateral estoppel bars the religating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity." (Id. at p. 242, 244 Cal. Rptr. 764.) "Unless the administrative decision is challenged, it binds the parties on the issues litigated and if those issues are fatal to a civil suit, the plaintiff cannot state a viable cause of action." (Id. at p. 243, 244 Cal.Rptr. 764.)
As our Supreme Court has explained, "unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 69-70, 99 Cal. Rptr.2d 316, 5 P.3d 874.) Pursuing a mandate action is referred to in this context as "[e]xhaustion of judicial remedies" and "is necessary to avoid giving binding `effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action.'" (Id. at p. 70, 99 Cal.Rptr.2d 316, 5 P.3d 874, italics omitted.)[20]
*434 However, not all administrative proceedings give rise to collateral estoppel. "Collateral estoppel may be applied to decisions made by administrative agencies '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate(People v. Sims (1982) 32 Cal.3d 468, 479, 186 Cal.Rptr. 77, 651 P.2d 321 (Sims,) quoting United States v. Utah Constr. Co. (1966) 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642.) When the proceeding lacks a quasi-judicial quality, collateral estoppel does not arise. (See Westlake Community Hasp. v. Superior Court (1976) 17 Cal.3d 465, 478, 131 Cal.Rptr. 90, 551 P.2d 410.) Thus, as our Supreme Court has explained, "For an administrative decision to have collateral estoppel effect, it and its prior proceedings must possess a judicial character.... Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." (Pacific Lumber Co. v. State Water Resources Control Bd. (2006) 37 Cal.4th 921, 944, 38 Cal. Rptr.3d 220, 126 P.3d 1040 (Pacific Lumber), citation omitted.)
Here, the description of the proceedings set forth in Stewart's factfinding report shows that the factfinding procedure did not have a judicial character. Specifically, a hearing was not held, testimony was not given under oath, the parties were not able to subpoena, call, examine, or cross-examine witnesses, and there is no indication that a record of the proceedings was created. Instead, Stewart appears to have conducted an investigation, consistent with step 2 in PPSM 70, in which she interviewed witnesses outside of the presence of the parties, and relied on those interviews, along with documentary evidence and oral statements submitted by the parties to reach a decision.[21] Such a procedure is not sufficient to give rise to collateral estoppel. (See Pacific Lumber, supra, 37 Cal.4th at p. 944, 38 Cal.Rptr.3d 220, 126 P.3d 1040 [collateral estoppel was not created when the parties were not given the opportunity to call and cross-examine witnesses during the administrative proceeding].)[22]
*435 We accordingly conclude that because collateral estoppel did not arise from the Regents' decision denying the October 2002 grievance and the June 2003 grievances, Brand was not required to challenge those decisions through a writ of mandate prior to adjudicating a suit for damages.

D. Brand Was Required to Exhaust Administrative Remedies with Respect to His Allegations Under Section 85A7.11

Brand argues that the trial court erred in ruling that he was required to exhaust his administrative remedies with respect to certain of his claims against the individual defendants in the third cause of action brought pursuant to section 8547.11. Brand contends that because there is no statement in section 8547.11 requiring that a plaintiff first exhaust administrative remedies, he was not required to do so.
As a preliminary matter, we note that the trial court's ruling is not particularly clear about the role that the concept of failure to exhaust administrative remedies played in its decision to sustain the demurrer to the third cause of action. On that issue, the trial court made the following statements. First, it stated, "As to the contention that certain conduct occurring while [Brand] was employed by the University was not discovered until after [Brand]'s termination, the Court finds such claims are barred for [Brand]'s failure to pursue and exhaust his administrative remedies." Second, summarizing its ruling the court stated, among other things, that "all three causes of action are barred for failure to exhaust administrative and/or judicial remedies." Reading the trial court's ruling as a whole, however, the order sustaining the demurrer to the third cause of action appears to have been based primarily on the decision that Brand had failed to exhaust his judicial remedies and was therefore barred by collateral estoppel, not that Brand failed to exhaust his administrative remedies.
Indeed, from our review of the record, it appears that the trial court could not have properly cited Brand's failure to exhaust administrative remedies as a basis to sustain a demurrer to the third cause of action. This is because there are clearly some allegations within the third cause of action for which, according to the judicially noticed documents, Brand did exhaust his administrative remedies when he included those allegations in the September 2002 grievances, the October 2002 grievance, or the June 2003 grievances.[23] "A demurrer does not lie to a portion of a cause of action" (PH II, Inc. v. Superior Court (1995) 33 Cal.App.4th 1680, 1682, 40 Cal. Rptr.2d 169) and "must dispose of an entire cause of action to be sustained." (Fremont Indemnity Co. v. Fremont General Corp. (2007) 148 Cal.App.4th 97, 119, 55 Cal.Rptr.3d 621.) Because the failure to exhaust administrative remedies would not dispose of the entire cause of action, the trial court erred to the extent that it sustained *436 the third cause of action on that basis.
On remand, the proper vehicle by which defendants could challenge particular allegations as being barred by failure to exhaust administrative remedies would include a motion to strike those allegations from the complaint. (Code Civ. Proc, § 436.) Because the issue is likely to arise on remand, we will discuss Brand's contention that he was not required to exhaust his administrative remedies with respect to any portion of his claims brought under section 8547.11. (Wachovia Bank v. Lifetime Industries, Inc. (2006) 145 Cal. App.4th 1039, 1056, 52 Cal.Rptr.3d 168 [addressing issue to provide guidance on remand].)
As our Supreme Court explained in Campbell, supra, 35 Cal.4th 311, 25 Cal.Rptr.3d 320, 106 P.3d 976, "the rule of exhaustion of administrative remedies is well established in California jurisprudence.... `In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' ... The exhaustion rule extends to employees seeking judicial review of an employer's administrative findings." (Id. at p. 321, 25 Cal.Rptr.3d 320, 106 P.3d 976, citations & fn. omitted.) Campbell further established that the administrative exhaustion requirement need not be spelled out in the applicable statute under which the plaintiff is attempting to file a lawsuit, but instead applies as a long-standing common law principle unless the applicable statute provides otherwise.[24] (Id. at p. 328, 25 Cal. Rptr.3d 320, 106 P.3d 976 ["the Legislature's silence in the ... statute makes the common law exhaustion rule applicable here and requires employees to exhaust their internal administrative remedies prior to filing a lawsuit"].) "[A]bsent a clear indication of legislative intent, we should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies." (Id. at p. 333, 25 Cal.Rptr.3d 320, 106 P.3d 976.)
Thus, because the text of section 8547.11 reveals no evidence that the Legislature intended to depart from the common law requirement of exhaustion of administrative remedies, that requirement applies here, and Brand must first exhaust his administrative remedies with respect to his claims asserted under section 8547.11.
As Campbell recognized, "the administrative remedies exhaustion rule has several exceptions, including, but not limited to ... (1) when the administrative agency cannot provide an adequate remedy, and (2) when the subject of controversy lies outside the agency's jurisdiction." (Campbell, supra, 35 Cal.4th at p. 322, 25 Cal. Rptr.3d 320, 106 P.3d 976.) As we will explain, neither of these exceptions apply here (and Brand does not identify any other possible exceptions). Specifically, a claim under section 8547.11 focuses on an individual's interference with the right of an employee to make protected disclosures. The UC Whistleblower Protection Policy covers "complaints of ... interference" filed by employees, which is defined in the policy as "[d]irect or indirect use of authority to obstruct an individual's rights *437 to make a protected disclosure." Under the policy, the chancellor "determines the appropriate corrective action, if any, which will be initiated against a University employee who is found to have ... interfered with an employee's ... right to make a protected disclosure." Thus, based on the UC Whistleblower Protection Policy, the subject of Brand's claims appears to fall within the scope of the Regent's jurisdiction, and the Regents are able to provide an adequate remedy.[25]
We accordingly conclude that because the doctrine of administrative exhaustion applies to Brand's claims brought under section 8547.11, Brand is barred from asserting any allegations that he did not pursue in his internal complaints.

E. Additional Grounds for Demurrer Not Reached by the Trial Court

Defendants argue that the ruling on the demurrer to the third cause of action (i.e., the claim against the individual defendants for interference under § 8547.11) should be affirmed on grounds not reached by the trial court. "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (Carman v. Alvord (1982) 31 Cal.3d 318, 324, 182 Cal. Rptr. 506, 644 P.2d 192 (Carman).) Thus, we will consider the additional grounds for the demurrer advanced below by defendants, but not ruled on by the trial court, to determine whether they provide a basis for affirming the judgment of dismissal.
As a preliminary matter, we note that defendants' appellate briefing urges us to affirm the demurrer to the third cause of action based on several grounds not presented to the trial court. Because our inquiry is whether there were any grounds "stated in the demurrer" that could support the trial court's order sustaining the demurer ruling, we do not consider those arguments.[26] (Carman, supra, 31 Cal.3d at p. 324, 182 Cal.Rptr. 506, 644 P.2d 192.) The only additional grounds for demurrer to the third cause of action asserted in the trial court, but not ruled on, were (1) that the allegations made in paragraph 56 of the complaint were barred by the absolute privilege established by Civil Code section 47, subdivision (b), which applies to communications made in the course of official proceedings; and (2) that Melman has immunity under section 821.6 from allegations that he delayed in initiating the investigation of the October 2002 grievance.
We now turn to an examination of these arguments.

1. Claim of Privilege Under Civil Code Section 17, Subdivision (b)

Civil Code section 47, subdivision (b) creates an absolute privilege for, among other things, a "publication or broadcast" made "in any ... official proceeding authorized by law." "The term official proceeding' extends to investigatory activities by public agencies," (Garamendi *438 v. Golden Eagle Ins. Co. (2005) 128 Gal.App.4th 452, 478, 27 Cal.Rptr.3d 239.) For example, statements made in the State Auditor's report into a whistleblower's allegation of improper governmental activity were privileged statements made in an "official proceeding." (Braun v. Bureau of State Audits (1998) 67 Cal.App.4th 1382, 1388-1389, 79 Cal.Rptr.2d 791.) "The privilege applies to any communication made in such proceedings by a participant that has some connection or logical relation to the proceedings." (Garamendi, at p. 478, 27 Cal.Rptr.3d 239.) Thus, in this case, statements made in connection with the official investigation into Brand's allegations concerning Paau's misconduct, or into Brand's internal complaints that he was retaliated against for his protected disclosures, would be covered by the privilege.
Defendants argued that the third cause of action is subject to demurrer because the allegations supporting that cause of action, which are set forth in paragraph 56 of the complaint, rely on statements protected by the privilege set forth Civil Code section 47, subdivision (b). To analyze this argument, we will examine each of the items that defendants contend is subject to the privilege.[27]
Paragraph 56(a) of the complaint alleges that one day after Brand made a protected disclosure about Paau's allegedly improper activities to a confidential whistleblower hotline, Wyman, who allegedly had no role in investigating the hotline report, improperly disclosed a transcript of the hotline report to Paau. The paragraph further alleges that Paau and Wyman thereafter colluded to render a false performance evaluation of Brand. Neither of these allegations seek to hold any defendant liable for a communication made in connection with an official proceeding, and thus the privilege set forth in Civil Code section 47, subdivision (b) does not apply.[28]
Paragraph 56(b) of the complaint alleges that after Brand started a dialog with an attorney in the University of California Office of the President regarding Paau's allegedly improper activities, Paau interfered and stopped the dialog by accusing Brand of insubordination, and later used this instance of purported insubordination to give Brand a negative performance review. This allegation also does not seek to hold any defendant liable for a communication made in connection with an official proceeding, and thus also is not covered by the privilege set forth in Civil Code section 47, subdivision (b).
Paragraph 56(c) of the complaint has multiple subparts describing various alleged impermissible conduct. First, Brand alleges that Paau threatened to humiliate him if he did not resign, and despite Brand's request, Woods did not take action to protect Brand. Second, Brand alleges that Paau continued to obstruct Brand's performance of his employment duties, involving Macagno in some of that obstruction; sought to falsify Brand's employment records; and ultimately terminated Brand. Third, referring to Stewart's May 2004 factfinding report, Brand *439 alleges that Melman sought to discredit Brand through the factfinding report allegedly issued by Melman's "organization," which allegedly contained a "blatant disregard of the facts." Finally, Brand alleges that Paau made untrue statements in his letter of intent to terminate Brand. We conclude that only one of these allegations seeks to hold a defendant liable for a statement made in connection with an official proceeding. Specifically, the statements made in Stewart's May 2004 factfinding report, which Brand attempts to ascribe to Melman, were made in the course of an official factfinding investigation by a participant in that investigation and thus are covered by the privilege set forth in Civil Code section 47, subdivision (b).

2. Immunity Under Section 821.6

Paragraph 56(c)(8) of the complaint alleges that Melman improperly refused to initiate the factfinding proceeding concerning the October 2002 grievance until September 2003.
Defendants' demurrer argued that Melman has immunity for this conduct under section 821.6, which states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."
In opposition to the demurrer, Brand did not contend that section 821.6 was inapplicable to an official's delay in instituting a factfinding proceeding.[29] Indeed, we note that the immunity afforded by section 821.6 is arguably broad enough to cover Melman's alleged delay in instituting proceedings. "`The immunity conferred by section 821.6 is not limited to peace officers and prosecutors but has been extended to public school officials ..., heads of administrative departments .... social workers ..., county coroners ..., and members of county boards of supervisors....'" (Javor v. Taggart (2002) 98 Cal.App.4th 795, 808, 120 Cal.Rptr.2d 174 (Javor).) Further, "[s]ection 821.6 is not limited to conduct occurring during formal proceedings. `[I]t also extends to actions taken in preparation for formal proceedings. Because investigation is "an essential step" toward the institution of formal proceedings, it "is also cloaked with immunity."'" (Ibid.) It is also relevant that "`"[s]ection 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute.'"" (Ibid.)
Instead of disputing the general applicability of section 821.6 to the situation presented, Brand argued that Melman is not protected by immunity because he was not acting within the scope of his employment as required by the plain language of the statute. We reject this argument. The complaint alleges that Melman did not initiate the investigation of the October 2002 grievance, although "the policy required him to do so." (Italics added.) This is an implicit admission that institution of the investigation was within Melman's official duties, and accordingly, that he was acting within the scope of his employment in delaying the investigation.[30] We thus conclude that Melman's delay in *440 instituting the factfinding proceeding was covered by the immunity set forth in section 821.6.
Because the allegation in paragraphs 56(c)(8) and 56(c)(9) of the complaint are the only allegations pertaining to Melman in the third cause of action, and we have determined that both of those allegations fail (based on the privilege afforded by Civil Code section 47, subdivision (b) and the immunity set forth in section 821.6, respectively), we conclude that the third cause of action fails to state a claim against Melman. We thus affirm the demurrer to the third cause of action only as to Melman.

DISPOSITION
Except for the trial court's ruling sustaining the demurrer to the third cause of action against Melman and the ruling sustaining the demurrer to the second cause of action, which Brand does not challenge on appeal, we reverse the judgment and remand for proceedings consistent with this opinion. Each party to bear its own costs on appeal.
WE CONCUR: McCONNELL, P.J., and HUFFMAN, J.
NOTES
[1] We will sometimes refer to Paau, Woods, Macagno, Melman and Wyman collectively as "the individual defendants."
[2] All further statutory references are to the Government Code unless otherwise indicated.
[3] According to the complaint, Woods, Melman, Wyman and Macagno are all employees of the Regents. The complaint does not fully explain their employment positions, but from information in the record it appears that during the relevant time frame (1) Woods was the UCSD Vice Chancellor, Resource Management; (2) Melman was the UCSD Director, Labor Relations; (3) Wyman was a Labor Advocate, Human Resources Labor Relations at UCSD; and (4) Macagno was a dean in UCSD's Biology Department.
[4] Brand's internal complaints were not attached to the complaint, but they are contained in the record because the trial court granted defendants' unopposed request to take judicial notice of them in connection with defendants' demurrer. A copy of the UC Whistleblower Protection Policy (dated October 4, 2002) is an exhibit to the complaint.
[5] A copy of PPSM 70 (dated March 1, 2000) is included in the record as part of the request for judicial notice that defendants filed in the trial court in support of their demurrer. PPSM 70, entitled "Complaint Resolution," appears to contain general procedures for the resolution of complaints by staff employees except for certain senior-level employees. The parties both appear to agree that PPSM 70 is applicable to Brand's employment classification. We note also that the complaint attaches a local UCSD complaint resolution policy titled "UCSD Implementing Procedures, 70/Complaint Resolution," which appears intended to direct the manner in which PPSM 70 is to be implemented on a local level.
[6] In contrast, under PPSM 70, certain other classifications of employees may proceed to a third step of the review process, which entails an administrative hearing conducted by a hearing officer at which the employee may examine witnesses and submit evidence.
[7] Stewart identified herself as an "Independent Party Reviewer." Because the UC Whistleblower Protection Policy provides that a "Retaliation Complaint Officer" (RCO) shall serve as the fact finder whenever a whistleblower complaint is resolved under a complaint resolution process requiring a factfinding, we infer that Stewart was also acting as an RCO in carrying out the factfinding process.
[8] Brand relied on Labor Code section 1102.5, subdivision (b), which states: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."
[9] Section 8547.11, subdivision (a) states: "A University of California employee, including an officer or faculty member, may not directly or indirectly use or attempt to use the official authority or influence of the employee for the purpose of intimidating, threatening, coercing, commanding, or attempting to intimidate, threaten, coerce, or command any person for the purpose of interfering with the right of that person to disclose to a University of California official, designated for that purpose by the regents, or the State Auditor matters within the scope of [the California Whistleblower Act]."
[10] The three complaint resolution policies attached to the complaint were (1) the UC Whistleblower Policy; (2) "UCSD Implementing Procedures, 70/Complaint Resolution"; and (3) "UCOP Human Resources Procedure 70Complaint Resolution" (UCOP Procedure 70), which appears to be uniquely applicable to the employees of the University of California Office of the President. We note that Brand alleges that he was employed by UCSD and nowhere alleges that he was employed by the University of California Office of the President. The complaint purports to quote from PPSM 70 (which is not attached to the complaint) for the proposition that the "Director" has 15 days after receiving a fact finder's report to issue a final binding decision. However, our review of the documents in the record shows that the complaint is quoting from UCOP Procedure 70, not from PPSM 70. PPSM 70 does not appear to provide a time limit for a final binding decision to be issued after a fact finder issues a report.
[11] Specifically, defendants were referring to allegations in the complaint (1) that after Brand was terminated, the Regents and Paau continued to use Brand's e-mail address to impersonate him; (2) that Paau stated he would be hostile to Brand if Brand regained his position; and (3) that during the posttermination investigation into Brand's grievances, Melman and the Regents applied the complaint resolution process in a retaliatory manner.
[12] This ruling logically would apply not only to Brand's causes of action premised on sections 8547.10 and 8547.11, but also to his cause of action premised on Labor Code section 1102.5.
[13] Brand also clarifies on appeal that he "is not claiming ... that [the Regents] failed to reach a timely decision on the [September 2002 grievances]." Thus, because section 8547.10, subdivision (c) permits a suit for damages only when the Regents fail to timely decide an allegation of retaliation, Brand is apparently conceding that he cannot pursue a suit for damages under section 8547.10 premised on allegations he made in the September 2002 grievances. Thus, we consider the viability of Brand's claims under section 8547.10 only insofar as they are based on the unlawful retaliation alleged in the October 2002 grievance and the June 2003 grievances.
[14] The Chancellor of the applicable campus (or a designee) must make the final decision regarding the complaint after reviewing the RCO's findings. However, the UC Whistleblower Protection Policy provides no deadline for the Chancellor's decision. The policy provides simply that "[t]he RCO is to present findings of fact based on evidence and factual conclusions to the Chancellor who shall render a decision in the matter.... The Chancellor will communicate the decision in writing to the complainant and to the person or persons accused of violating the University's Whistleblower Protection Policy."
[15] Indeed, Brand apparently takes the position that the October 2002 grievance was improperly never assigned to a fact finder and instead was addressed for the first time during step 2 of the complaint resolution procedure when Vice Chancellor Davis explicitly rejected the grievance in his July 6, 2004 decision.
[16] As we have noted, the factual issues raised in the October 2002 grievance are discussed in Stewart's factfinding report, although the report does not identify the October 2002 grievance as one of the complaints it is addressing.
[17] The record contains no indication that the 120-day deadline was extended by the LDO in Brand's case. However, because the issue of the timeliness of the decision was briefed as part of a demurrer, not all of the relevant evidence may have been before the trial court. The Regents are thus not precluded from presenting evidence in a summary judgment motion, or at trial, to establish that the deadline was properly extended and that the decision was therefore timely.
[18] In his reply brief, Brand purports to append legislative history from a different statutory provisionsection 8547.8, subdivision (c)that deals with the circumstances under which a State of California employee may bring a suit for damages based on retaliation for a protected disclosure. We do not consider this material for two reasons. First, because we have concluded that the meaning of section 8547.10, subdivision (c) is plain and unambiguous, we may not resort to additional materials, including legislative history, to interpret the statute. (Diamond Multimedia, supra, 19 Cal.4th at p. 1055, 80 Cal.Rptr.2d 828, 968 P.2d 539 ["Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning"].) Second, Brand's attempt to append the legislative history to his reply brief is procedurally and substantively defective. The documents are not identified or authenticated. Instead, they are fragments of documents (three pages from the middle of a transcript and the first page of a memorandum) that are merely appended to the end of Brand's brief. From the fragment of the transcript presented by Brand, it is not clear which legislation it is discussing or who the speakers are. If Brand wanted us to take judicial notice of legislative history documents that were not already in the appellate record, the proper procedure would have been to file a request for judicial notice attaching properly authenticated and complete legislative history documents. (See, e.g., Ketchum v. Moses (2001) 24 Cal.4th 1122, 1135, fn. 1, 104 Cal.Rptr.2d 377, 17 P.3d 735.)
[19] We are aware that our Supreme Court is currently considering a case presenting the issue of whether section 8547.10, subdivision (c) should be interpreted to allow a damages action when the Regents have made a timely decision on a whistleblower's internal complaint. (Miklosy v. University of California, review granted Jan. 4, 2006, S139133.) Because the issue in this case, in contrast, concerns whether Brand may bring a damages action following an untimely decision, we do not anticipate that our Supreme Court's eventual decision in Miklosy will directly address the issue presented here, although it may clarify the dictum contained in Campbell.
[20] We note, however, that "administrative decisions should not be given res judicata effect if the statutory scheme explicitly or implicitly shows a contrary intent." (People v. Damon (1996) 51 Cal.App.4th 958, 970, 59 Cal. Rptr.2d 504. citing Astoria Federal S. & L. Assn. v. Solimino (1991) 501 U.S. 104, 110-112, 111 S.Ct. 2166, 115 L.Ed.2d 96, and Gikas v. Zolin (1993) 6 Cal.4th 841, 851-852, 25 Cal.Rptr.2d 500, 863 P.2d 745.) Here, however, we see nothing in section 8547.10 indicating an intent to abrogate the normal operation of collateral estoppel arising from quasi-judicial administrative proceedings.
[21] Further emphasizing the lack of a judicial character to the factfinding conducted at step 2 of the procedure set forth in PPSM 70, we note that step 3 of the procedure (available only to certain classifications of employees in certain instances) affords the right to a hearing which appears much more like a full quasi-judicial hearing, including the right to call and examine witnesses and to have the proceedings recorded.
[22] In discussing whether the factfinding procedure was of a quasi-judicial nature sufficient to give rise to collateral estoppel, the parties cite cases dealing with whether an administrative decision is subject to writ review under Code of Civil Procedure section 1094.5. We reject this approach because Pacific Lumber established that the amenability of an administrative decision to review under Code of Civil Procedure section 1094.5 is not determinative of whether that decision gives rise to collateral estoppel. (Pacific Lumber, supra, 37 Cal.4th at p. 944, fn. 12, 38 Cal. Rptr.3d 220, 126 P.3d 1040.) Instead, we apply the principles set forth in Sims, supra, 32 Cal.3d at page 479, 186 Cal.Rptr. 77, 651 P.2d 321, and Pacific Lumber, at page 944, 38 Cal.Rptr.3d 220, 126 P.3d 1040, to determine whether an administrative proceeding had a sufficiently judicial character to give rise to collateral estoppel. Further, we express no opinion as to whether, if Brand had chosen to challenge the Regents' decision through a writ of mandate, he could have sought a writ of administrative mandamus under Code of Civil Procedure section 1094.5 rather than a traditional writ of mandamus under Code of Civil Procedure section 1085.
[23] For example, each of the grievances focused on the conduct of Paau, and the October 2002 grievance specifically mentions conduct by Macagno, Melman and Woods. We acknowledge that our ruling as to Brand's exhaustion of administrative remedies is made in the context of the record available upon demurrer. We do not intend to foreclose the parties from further litigating the issue of exhaustion of administrative remedies with a more fully developed factual record.
[24] Thus, for instance, section 8547.10, subdivision (c) slightly amends the general rule of administrative exhaustion by, among other things, permitting a plaintiff to go forward with a suit for damages under that section, even when the Regents have not made a final decision on an internal grievance, if the Regents have missed the applicable deadline for reaching a decision. In the case of section 8547.11, however, the statute plainly contains no exception to the administrative exhaustion requirement.
[25] It appears that the Regents are not able to award monetary damages to Brand in response to a claim of interference. However, this does not mean that the administrative remedy is inadequate. Campbell emphasized that an administrative remedy is adequate even though monetary damages are only available through an eventual lawsuit. (Campbell, supra, 35 Cal.4th at p. 323, 25 Cal.Rptr.3d 320, 106 P.3d 976.)
[26] For example, we do not consider the arguments made for the first time on appeal (1) that certain allegations against the individuals are barred by the statute of limitations and (2) that the facts pled in the complaint do not identify any conduct made unlawful by section 8547.11.
[27] Defendants do not identify paragraph 56(c)(8) of the complaint as covered by the privilege set forth in Civil Code section 47, subdivision (b). Instead, paragraph 56(c)(8) is the subject of defendants' argument for immunity under section 821.6. We discuss paragraph 56(c)(8) in connection with that issue.
[28] We note that because the issue of privilege was presented in the context of a demurrer, our ruling does not foreclose the possibility that defendants may develop facts in addition to those specifically pled in the complaint to establish in a subsequent motion that certain allegations against the individuals are protected by privilege.
[29] In his appellate briefing, Brand referred us to his opposition brief in the trial court for his position on defendants' claim to immunity.
[30] Although the complaint contains a conclusory allegation that all of the acts stated in paragraph 56 were done "outside of the scope of [the defendants'] authority and duties," we disregard this allegation because "a conclusory allegation in a complaint that an employee was acting `outside the scope of employment' is to be disregarded when the factual allegations and inferences indicate otherwise." (Javor, supra, 98 Cal.App.4th at p. 810, 120 Cal. Rptr.2d 174.)